In re Myron BROWN, Petitioner,

v.

James A. GAMMON, Respondent.

No. WD 52841.

Missouri Court of Appeals,
Western District.

April 29, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 1, 1997.

Ellen H. Flottman, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Stephen D. Hawke, Assistant Attorney General, Jefferson City, for respondent.

Before BRECKENRIDGE, P.J., and HANNA and SMART, JJ.

BRECKENRIDGE, Presiding Judge.

Myron Brown pleaded guilty to one count of distribution of a controlled substance near a school, in violation of § 195.214, RSMo 1994.[1] After his plea of guilty, the trial court sentenced Mr. Brown to twenty years imprisonment, but retained jurisdiction to place him on probation after 120 days, under the provisions of § 559.115. In his petition for a writ of habeas corpus, Mr. Brown contends that he is being unlawfully detained because his guilty plea has since been rendered involuntary. He argues this is so because, as part of his plea agreement, the trial court offered to place him on probation after 120 days imprisonment if he completed a substance abuse treatment program while in prison. Mr. Brown argues that after he completed the program, the trial court denied him probation in violation of the plea agreement, thereby rendering his guilty plea involuntary.

---

1. All statutory references are to the Revised Statutes of Missouri 1994.

On November 23, 1993, Mr. Brown pleaded guilty to one count of sale of a controlled substance near a school in violation of § 195.214. Mr. Brown's plea was pursuant to a plea bargain for a recommended sentence of twelve years in prison. Prior to accepting the plea, the court questioned Mr. Brown concerning his understanding, including asking him if anyone had promised him probation, to which Mr. Brown responded, "No, sir."

After finding that Mr. Brown's guilty plea was voluntary, the trial court ordered a presentence investigation report. The presentence investigation recommended that the trial court deny probation for Mr. Brown. The report also indicated that Mr. Brown should undergo substance abuse treatment and rehabilitation.

At the sentencing hearing, the trial court initially referred to discussions between the court and counsel concerning the court's proposal of a sentence other than the twelve years of the plea bargain. The trial court informed Mr. Brown that it was willing to sentence him to the agreed upon term of twelve years. However, the trial court also expressed its desire to sentence Mr. Brown to a term of twenty years in prison under the one-hundred-and-twenty-day-call-back provisions of § 559.115.[2] At the sentencing hearing, the following colloquy between the court and Mr. Brown then occurred:

> Judge Frawley: [M]y view is I'm giving you an opportunity to get out in 120 days. It's an opportunity the State has not recommended. It is an opportunity that I suspect they oppose. And in my view of life, if one is given an opportunity, there is a potential cost if one does not seize that opportunity.
>
> I'm giving you a chance—instead of doing whatever it would have to be, let's say a third of twelve years or roughly four

years—instead of having to do four, I'm giving you the opportunity to only have to do 120 days. My view is that if you go down and you screw that up and you blow it off, then there should be a cost, a penalty. I don't think that's unfair.

> And so that's one benefit I'm giving you and one potential cost that you have. The other penalty that you have is—from my standpoint—is if I give you a 559, the number of years to which you can be sentenced is only that which I give you today. And so if you complete the 120–day program and come out on the street, my view is that there should be a penalty, an extreme penalty, if you screw that up.
>
> So there's two things in your life that you have to do correctly, and there's a penalty if you screw up either of them. So that's the reason for the additional years. I am happy to sentence you to the twelve years as the State has recommended. I am not going to be mad, upset, feel that you've done something to me unfairly if you now tell me you've changed your mind and wish to be sentenced to the twelve. Those are the reasons why it's twenty . . .

Mr. Brown agreed to this proposal and pleaded guilty. There was no questioning of Mr. Brown as to his understanding of the agreement as proposed by the court. He was merely asked, "Mr. Brown, is it still your wish to be sentenced pursuant to Section 559?" To which he responded, "Yes, sir." The trial court then sentenced Mr. Brown to a twenty-year sentence under the call-back provision of § 559.115 "with the express understanding that Defendant shall participate in substance abuse treatment at the Mineral Area or Farmington Treatment Center."

Mr. Brown was remanded to the department of corrections. Prior to the end of the 120–day period, a Court Report Investigation was filed with the trial court. As part of the

---

2. Section 559.115.2 provides the following:
   A circuit court only upon its own motion and not that of the state or the defendant shall have the power to grant probation to a defendant anytime up to one hundred twenty days after such defendant has been delivered to the custody of the department of corrections but not thereafter. The court may request information and a recommendation from the department concerning the defendant and such defendant's behavior during the period of incarceration. Except as provided in this section, the court may place the defendant on probation in a program created pursuant to section 217.777, RSMo, or may place the defendant on probation with any other conditions authorized by law.

report, the Board of Probation and Parole evaluated Mr. Brown's performance in the substance abuse program at the Farmington Treatment Center. It was reported that Mr. Brown was only going to be able to complete 11 weeks of the full 12 week FTC program prior to the end of the 120 days of shock probation. This did not appear, however, due to anything other than a lack of time. Mr. Brown received an overall "fair" rating. The report noted that Mr. Brown had "done little to personalize or internalize his recovery program" and that his basic understanding of the twelve-step program was "fair." However, the report indicated that Mr. Brown received no conduct violations and only one program infraction for violating minor rules while in the substance abuse treatment program. The reported ended with Farmington Treatment Center personnel requesting that Mr. Brown be released at the end of the 120–day period.

Based on this report, the trial court denied Mr. Brown probation. In due course, Mr. Brown completed the substance abuse program and received an official certificate of completion. Thereafter, Mr. Brown filed a petition for a writ of habeas corpus in the Circuit Court of Randolph County. The circuit court denied his petition without an evidentiary hearing based solely on its belief that because the trial court denied him probation, Mr. Brown was not "entitled to such release." Subsequently, Mr. Brown filed a petition for a writ of habeas corpus in this court.

Before considering the merits of Mr. Brown's claim, this court must determine whether habeas corpus is the appropriate remedy in this case. "Any person restrained of liberty within this state may petition for a writ of habeas corpus to inquire into the cause of such restraint." Rule 91.01; § 532.010, RSMo 1994. Rule 91 proceedings are limited "to determining the facial validity of confinement." *State ex rel. Haley v. Groose*, 873 S.W.2d 221, 222 (Mo. banc 1994) (quoting *State ex rel. Simmons v. White*, 866 S.W.2d 443, 445 (Mo. banc 1993)). Under the statutes that have codified the common law writ, the "facial validity" of confinement is determined on the basis of the entire record

of the proceeding in question. *State ex rel. Simmons*, 866 S.W.2d at 445. Habeas corpus is also available in cases where there are circumstances so rare and exceptional that a manifest injustice would result in the absence of habeas corpus relief. *Reuscher v. State*, 887 S.W.2d 588, 591 (Mo. banc 1994).

Mr. Brown's essential complaint relates to the voluntariness of his guilty plea. As such, this is normally a matter that must be pursued in a Rule 24.035 postconviction motion. Rule 24.035(a); *Vernor v. State*, 894 S.W.2d 209, 210 (Mo.App.1995). However, Mr. Brown was not and could not have been cognizant of his claim until the ninety-day time limit of the rule had expired. The time limits of Rule 24.035 are to be strictly adhered to and are not suspended in cases involving "shock probation." *Matthews v. State*, 863 S.W.2d 388, 390 (Mo.App.1993).

Although Mr. Brown failed to timely bring his claim concerning his guilty plea under Rule 24.035, there is authority that an issue unknown or not reasonably discoverable to the inmate during the period in which he could file for relief under Rule 24.035 can provide the basis for habeas corpus relief under Rule 91. *Merriweather v. Grandison*, 904 S.W.2d 485, 489 (Mo.App.1995); *Walls v. Delo*, 755 F.Supp. 873, 875 (E.D.Mo.1991). Here, Mr. Brown's complaint was not known to him nor was it reasonably discoverable to him during the applicable ninety-day time limitation of Rule 24.035. It was impossible for Mr. Brown to realize that he would be denied probation until 120 days after he began his sentence, or thirty days after the time limits of Rule 24.035 had run. Therefore, because Mr. Brown is "restrained of liberty within this state" under Rule 91.01 and is inquiring into the cause of his restraint, a petition for a writ of habeas corpus is the appropriate remedy.

Mr. Brown argues that the trial court's denial of probation after he completed the substance abuse treatment program rendered his guilty plea involuntary because his plea rested on the trial court's promise to release him after 120 days if he completed the program. When considering whether a defendant pleaded guilty based on a mistak-

en belief about the sentence and plea agreement, "the test is whether a reasonable basis exists in the record for such belief." *McNeal v. State,* 910 S.W.2d 767, 769 (Mo.App.1995). This court will find that a reasonable mistake exists only if Mr. Brown's belief was based upon positive representations upon which he was entitled to rely. *Id.* Whenever considering a plea agreement, this court notes that plea bargaining is to be conducted fairly on both sides with the results not disappointing the reasonable expectations of either the accused or the state. *Lawson v. State,* 757 S.W.2d 646, 647 (Mo.App.1988).

Here, Mr. Brown's mistaken belief concerning his sentence was reasonable and was based upon the positive representations of the trial court. The trial court referred to an "opportunity" it was giving Mr. Brown if he would agree to a sentence of twenty years rather than the twelve-year sentence recommended by the state. The court then advised Mr. Brown that he would suffer the consequences of serving twenty years if he was to "screw up" or "blow it off." Mr. Brown was not questioned during sentencing concerning his understanding of the court's proposal, and at no time was he advised that the granting of probation at the end of 120 days was entirely within the discretion of the trial court, that there could be no binding "agreement" entitling him to probation. Nor is there a reference in the record to any discussion between Mr. Brown and his counsel concerning these issues. The resulting misunderstanding in this case underscores why there is a rule prohibiting judges from participating in plea negotiations and discussions between counsel for the accused and the state. Rule 24.02(d). *See Toler v. State,* 542 S.W.2d 80, 82 (Mo.App.1976).

Unfortunately, the trial court did not clarify the "opportunity" it was affording Mr. Brown, leaving the agreement open to at least two different interpretations. On one hand, the plea agreement may have meant that the court would grant Mr. Brown probation after 120 days in prison if he simply did what was necessary to complete the drug program. On the other hand, the agreement could have meant that Mr. Brown had to successfully complete the program, as viewed in the discretion of the trial court, in order to qualify for probation at the end of the 120–day period. Whether the "opportunity" was the chance to be granted probation upon completion of the program or the chance to receive probation based on a subjective evaluation of Mr. Brown's performance in the substance abuse program is not clear. Since the agreement is open to two interpretations, it is ambiguous and Mr. Brown's guilty plea was based on a reasonable mistake of fact. Because Mr. Brown's mistake was reasonable and it was based on the positive representations of the court, upon which he was entitled to rely, Mr. Brown's guilty plea has been rendered involuntary. *McNeal,* 910 S.W.2d at 769.

Since Mr. Brown's guilty plea was involuntary based on his reasonable mistake of fact, this court must address the matter of the remedy to which he is entitled. "If the accused has been misled or induced to plead guilty by fraud, mistake, misapprehension, fear, coercion, or promises, the defendant should be permitted to withdraw his guilty plea." *Hampton v. State,* 877 S.W.2d 250, 252 (Mo.App.1994). Therefore, because Mr. Brown was reasonably mistaken as to the terms of the plea agreement, thereby rendering his guilty plea involuntary, Mr. Brown's petition for a writ of habeas corpus is granted. Mr. Brown's judgment and sentence are vacated and the cause is remanded to the trial court to provide Mr. Brown the opportunity to withdraw his guilty plea.

All concur.