**Jon E. REED, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. WD 61748.**

Missouri Court of Appeals, Western District.

Sept. 16, 2003.

Robert S. Halas, Independence, for Appellant.

Eric T. Lanham, Douglas M. Greenwald, Co–Counsel, Kansas City, KS, for Respondent.

Before HARDWICK, P.J., BRECKENRIDGE and SPINDEN, JJ.

### ORDER

John Maurice Schilmoeller, Appellate Defender Office, Kansas City, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., John Munson Morris and Patrick T. Morgan, Office of Attorney General, Jefferson City, for Respondent.

## RONALD R. HOLLIGER, Judge.

Jon E. Reed appeals the denial of his Rule 24.035 motion without hearing, contending that his plea agreement was breached, rendering his plea involuntary, because he was never placed in the Regimented Discipline Program, given the opportunity to complete the program, and released on probation. We reverse because the plea agreement and the judge's representations in accepting the plea promised that he would be released on probation if he completed the program and that agreement was breached without any fault of Reed when the Department of Corrections failed to place him in that program.

Reed was charged with the class B felony of sale of a controlled substance, Section 195.211, RSMo 2000.[1] He agreed to plead guilty, and the State agreed to recommend that he receive a sentence of seven years pursuant to the regimented discipline program under Section 217.378, RSMo. The regimented discipline, or "boot camp," program is a program for youthful offenders with no prior felony record. Unlike the 120–day shock incarceration program or drug treatment program under Section 559.115, RSMo, (where the court has discretion whether or not to grant probation at the end of 120 days), the boot camp statute provides that probation shall be granted upon successful completion of the program and the defendant cannot be considered for probation if he fails to complete the program:

If, within one hundred twenty days after commitment of the defendant the court is advised by the department of corrections of the individual's successful completion of the regimented discipline program, *the court shall* cause the individual to be placed on probation prior to the expiration of the one-hundred twenty day period. Failure of the individual to complete the program *shall cause to be void* the right to be considered for probation on this sentence and the individual will serve the sentence prescribed.

§ 217.378.5, RSMo (emphasis added).

### The Plea Hearing

At the conclusion of the defendant's waiver of rights and establishment of the factual basis for the charge, the court asked Reed if he had any questions:

Defendant: No, your honor. I do understand that it is 120.

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

Court: That is right. That is what it is called in vernacular, boot camp.

After announcing its findings and acceptance of the plea, the court advised Reed of his rights under Rule 24.035 advising him that any motion under that rule had to be filed within ninety days. It then advised him:

Defendant: Yes, your honor. I have a question.

Court: All right.

Defendant: You said I will—I will not be released from the 120. I will be sent back to Jackson County?

Court: Yes.

Defendant: Still in custody until I arrive at court?

Court: You will be brought back and placed on probation if you successfully complete that program.

Defendant: Okay. That is the way that works?

Court: That is right.

Although the record on appeal contains no correspondence or reports from the Department of Corrections, Reed's *pro se* motion alleges both overcrowding in the boot camp program and a Kansas detainer as reasons why he was not sent to the boot camp program at Farmington.

The record on appeal[2] does not directly reflect whether the plea court was advised that Reed was not to be placed in the program or for what reason.[3] It seems

certain, however, that somehow the court became aware shortly after the plea that Reed was not to be sent to boot camp because, only twenty-eight days after the plea, the court made a written request for an institutional progress report to Section 559.115, RSMo (the shock incarceration program), rather than the boot camp program under Section 217.378, RSMo, and said it would consider his release on probation under Section 559.115. The motion court also made a finding in its judgment that movant wasn't "able to enter and complete the program" and that the court, in an attempt to avoid any prejudice to him, obtained an institutional report and considered him for probation anyway.[4]

## Point on Appeal

■ Reed argues, in his sole point on appeal, that his guilty plea agreement was breached because he was not placed in the Regimented Discipline Program; and if he had successfully completed the program he would have been placed on probation as the plea court promised. He argues that the plea was, therefore, rendered invalid. Alternatively, he contends that he received ineffective assistance of counsel to the extent that counsel's advice about the plea agreement was erroneous and affected the voluntariness of his plea. We do not address his alternative argument because of our treatment of his main contention.

■ Review on appeal of a denial of post-conviction relief is limited to whether

---

2. Pursuant to our authority under Rule 24.035(h), we have also reviewed the original criminal file in this matter and find no correspondence from the Department of Corrections or institutional report that explains why Reed was not placed in the program.

3. Section 217.378.3(3), RSMo, provides that the program's utilization is subject to space availability as determined by the Department of Corrections and if the court is advised no space is available the court "shall consider

other authorized dispositions." Because of the limited number of beds in this program, the better practice has been for counsel and/or the court to get a bed reservation date before placement into this program.

4. The court did write a letter to the Department of Corrections denying Reed probation because of his behavior and attitude before the 120 days had expired, but after Reed had filed his *pro se* Rule 24.035 motion.

the findings, conclusions, and judgment of the motion court are clearly erroneous. Those findings and conclusions are clearly erroneous only if we are convinced that a mistake has been made. *Counce v. State*, 993 S.W.2d 579, 580 (Mo.App.1999). A guilty plea resulting from a plea agreement is binding upon both the State and the defendant. *White v. State*, 84 S.W.3d 122, 125 (Mo.App.2002). If that agreement is breached, the parties are returned to their pre-bargain status. *State v. White*, 838 S.W.2d 140, 142 (Mo.App.1992).

The first issue is, therefore, whether the plea agreement was breached. The State contends that it was not because all the State agreed to (and all that it could be bound to) was to *recommend* that the sentence of seven years be served pursuant to Section 217.378, the boot camp program. The State argues that the agreement was honored because it did, in fact, make that recommendation. This argument is belied by the record and blurs unacceptably the distinction between an open plea (sometimes called a "plea up") with a sentence recommendation by the State and a plea agreement which is considered binding between the parties and presented to the court for its acceptance or rejection. In the latter situation, the defendant is entitled to withdraw his plea if the court does not accept the agreement. *See* Rule 24.02(d). The plea record clearly reflects that a plea agreement was being presented to the court for its acceptance or rejection. The prosecutor never indicated any qualification to the agreement nor did the plea court indicate that the State was only making a recommendation that the court might or might not follow and confirm that the defendant was aware of the non-binding nature of the agreement between him and the State.[5] Plea agreements and plea records are not the place for mincing of words and parsing of meanings after the fact. There is no legitimate reason why both counsel for the State and defendant and the trial court itself cannot and should not make the binding or non-binding nature of the plea agreement crystal clear. To do so would eliminate many needless questions and unnecessary subsequent post-conviction litigation. Nevertheless, there is no doubt on the plea record here that the agreement was presented to the plea court as an up or down recommendation and that the trial court accepted and approved of the plea agreement. Under such circumstances, the responsibility for satisfaction of the direct consequences of the plea agreement and sentence lies equally upon the State and the court.

Sentences to Department of Corrections programs which may result in a subsequent grant of probation by the sentencing court have too often also lead to subsequent litigation either by Rule 24.035 or by writ of habeas corpus. Examples of these alternative sentencing schemes are: Section 559.115, RSMo (either shock incarceration or drug treatment); Section 217.362, RSMo (long-term drug treatment program); Section 217.785, RSMo (non-institutional Phase I and institutional Phase II); and Section 217.378, RSMo (Regimented Discipline). Each of these programs have different characteristics and goals but share the common purpose of permitting release of a defendant on probation without serving the required time under the actual sentence. Each program also grants varying degrees of discretion to the sentencing court for making the determination for early release on probation (or grant that discretion to the board of probation and parole in the case of Section 217.364). The discretion is broad-

---

**5.** Amended Rule 24.02, effective January 1, 2004, places clear obligations on the plea court to confirm the defendant's understanding of the nature of a plea agreement.

est under Section 559.115, RSMo, which allows a trial court to recall a defendant and place him on probation within 120 days even if the original sentence made no reference to that statute.

The Regimented Discipline Program statute provides:

1. As used in this section, the term "Missouri regimented discipline program", means a program of institutional correctional alternatives in discipline, exercise, and treatment.

2. The department of corrections shall establish by regulation the Missouri regimented discipline program including rules determining how and when a defendant shall be admitted into or removed from the program.

3. Eligibility for the court to impose a sentence to the Missouri regimented discipline program requires:

(1) That the individual so sentenced is on felony probation at the time of the court's consideration, that the conditions of the probation have been violated, that the probationer is subject to revocation and that other community alternatives have been exhausted; or

(2) The court determines that in the absence of the Missouri regimented discipline program the individual would be committed to the department of corrections to serve a prison term; and

(3) The availability of space in the program which shall be determined by the department of corrections. If the court is advised that there is no space available, the court shall consider other authorized dispositions;

(4) That the individual so sentenced must be between the age of seventeen and twenty-five and shall not have a prior felony conviction.

4. Any time prior to one hundred twenty days after commitment of such defendant to the department, the department shall prepare and file with the circuit court a report on the progress of the defendant in the Missouri regimented discipline program.

5. If, within one hundred twenty days after commitment of the defendant, the court is advised by the department of corrections of the individual's successful completion of the regimented discipline program, the court shall cause the individual to be placed on probation prior to the expiration of the one-hundred-twenty-day period. Failure of the individual to complete the program shall be cause to void the right to be considered for probation on this sentence and the individual will serve the sentence prescribed.

§ 217.378, RSMo. The State does not concede, but also does not dispute, Reed's argument that, under the provisions of subsection 5, he would be entitled to be placed on probation upon successful completion of the program. Rather, the State argues that if there was any prejudice to Reed from his not having the opportunity to enter and complete the program that the prejudice was cured when the trial court, in its discretion, considered Reed for probation under Section 559.115 and, in its discretion, denied probation. We do not need to construe the language of subsection 5 for resolution of this case.

Whether or not Section 217.378.5, RSMo, grants one who successfully completes the program a right to probation is immaterial, as the trial court did make that promise to Reed during the plea hearing:

Court: Well, we are actually sentencing you under the statute that **you will be called back in 120 days if you successfully complete this.** It is impor-

tant to understand that boot camp—if you for some reason get kicked out of boot camp, you're facing a seven year sentence.

Defendant: Yes

(emphasis added). There was no added or express qualification that the court would only consider Reed for probation after successful completion of boot camp or that the court would retain the discretion to grant or deny probation after receiving a progress report from the institution. Nor was he ever advised of the potential consequences if he did not qualify for the program or there was no space available and possible effects of these possibilities on the binding or non-binding nature of the plea agreement.

Although we have found no comparable case under Section 217.378, RSMo, the holding and discussion in *Brown v. Gammon*, 947 S.W.2d 437 (Mo.App.1997), is helpful. Brown pleaded guilty to a drug charge and was sentenced to twenty years imprisonment pursuant to the ITC drug treatment program under Section 559.115. Through no fault of his own, Brown was able to complete only 11 weeks of the 12-week program and his progress was described as "fair." *Id.* at 440. Thereafter, the sentencing court denied release on probation. Brown subsequently filed a petition for a writ of habeas corpus (because his time for filing under Rule 24.035 had expired before he was aware of the probation denial). *Id.* Brown contended that his guilty plea had been rendered involuntary by the denial of probation because the trial court had promised him an early release if he completed the program.

■ "When considering whether a defendant pleaded guilty based on a mistaken belief about the sentence and plea agreement, the 'test is whether a reasonable basis exists in the record for such belief.'" *Id.* at 440–41 (quoting *McNeal v.*

*State,* 910 S.W.2d 767, 769 (Mo.App.1995)). The *Brown* court went on to state:

This court will find that a reasonable mistake exists only if Mr. Brown's belief was based upon *positive representations* upon which he was entitled to rely. Whenever considering a plea agreement, this court notes that plea bargaining is to be conducted fairly on both sides with the results not disappointing the reasonable expectations of either the accused or the state.

*Id.* at 441 (citation omitted). *See also, Lawson v. State,* 757 S.W.2d 646, 647 (Mo.App.1988). In *Brown,* we held that the plea colloquy was ambiguous and subject to two interpretations because of the trial court's reference that it was going to give Brown the "opportunity" to earn an early release. *Id.* Because the plea agreement was open to two interpretations, we held that Brown's plea was based on a reasonable mistake of fact upon which he had the right to rely. We, therefore, vacated the judgment and remanded to provide Brown the opportunity to withdraw his guilty plea. *Id.*

No such ambiguity is contained in the plea colloquy at issue. The court, without reservation or qualification, positively represented to Reed that he would be released early if he completed the program and would serve his full sentence if he did not. In *Green v. State,* 32 S.W.3d 208, 211 n. 4 (Mo.App.2000), the Southern District of this court even more clearly expressed that the discretion granted the trial judge under Section 559.115, RSMo, can be relinquished by the sentencing judge by representations made to the defendant and that the defendant can thereby acquire rights upon which he is entitled to rely. Here, Reed based his guilty plea upon a reasonable mistake of fact and was entitled to rely upon that representation. When he was unable to enter the program, through

no fault of his own, he lost the opportunity to perform his part of the plea bargain and thus ensure his early release. When faced with the fact that Reed would not have the opportunity to complete his part of the bargain by entering and completing the boot camp program, the court was left with only two options: release Reed on probation anyway or grant Reed an opportunity to withdraw his plea. Consideration of his release under a discretionary standard pursuant to Section 559.115, RSMo, was not part of his plea agreement.[6]

Reed's conviction is vacated and the cause remanded to provide him with an opportunity to withdraw his guilty plea.

JOSEPH M. ELLIS, Chief Judge, Presiding Judge, and PAUL M. SPINDEN, Judge, concur.

---

6. As noted earlier, we do not need to consider whether the trial court has any discretion under Section 217.385 to deny probation to a defendant who successfully completes the program.