Ronnie CONLEY, Movant–Appellant,

v.

STATE of Missouri, Respondent–Respondent.

No. SD 29386.

Missouri Court of Appeals, Southern District, Division One.

Jan. 12, 2010.

Scott Thompson, St. Louis, MO, for Appellant.

Chris Koster, Attorney General, and Jamie Pamela Rasmussen, Assistant Attorney General, Jefferson City, MO, for Respondent.

DON BURRELL, Judge.

Ronnie Conley ("Movant") appeals the denial of his amended motion seeking post-conviction relief under Rule 24.035.[1] Movant pled guilty to two counts of felony stealing pursuant to a plea agreement that called for Movant to receive concurrent five and seven year sentences executed under section 217.362,[2] a statute that would allow Movant to be placed on probation after successfully completing a long-term drug treatment program ("the treatment program") at the Missouri Department of Corrections ("DOC"). In his sole point on appeal, Movant alleges his guilty plea was rendered involuntary because the trial court "misled [Movant] into pleading guilty in exchange for long-term drug treatment without explaining to [Movant] he could lose the promised opportunity for probation before even entering the program." Finding no merit in Movant's allegation of error, we affirm the denial.

### Facts and Procedural Background

Movant was originally charged with one count of felony stealing. *See* section 570.030. Movant reached a plea agreement with the State that called for him to plead guilty to that offense in exchange for a recommendation from the prosecutor that Movant receive a five year DOC sentence to be executed pursuant to section 217.362. The trial court accepted Movant's guilty plea, ordered a sentencing assessment report, and set a sentencing

---

1. Unless otherwise noted, all rule references are to Missouri Court Rules (2009).

2. Unless otherwise noted, all references to section 217.362 are to RSMo Cum.Supp.2006. All other statutory references are to RSMo 2000.

date. At Movant's sentencing hearing, the court agreed to be bound by the plea agreement and sentenced Movant in accordance with its terms. After all this had occurred, the prosecutor informed the court that Movant had committed another felony stealing offense between the time of his guilty plea and the sentencing hearing and that a plea agreement had also been reached on that offense. Movant then pled guilty to the new offense, and the court sentenced him in accordance with that plea agreement to serve concurrently with his previous sentence a seven year DOC sentence also executed pursuant to section 217.362. In regard to Movant's potential release on probation, the court informed Movant that it would "follow any recommendations made by [DOC] relative to a release of [Movant], upon his successful completion of the long-term drug treatment program."

When Movant was delivered to DOC, he was taken to the Missouri Eastern Reception, Diagnostic and Correctional Center in Bonne Terre ("Diagnostic"). At the hearing on his amended motion ("motion hearing"), Movant admitted he knew when he entered his guilty plea that he would first go to a diagnostic center before ultimately going to the facility where he would be housed while participating in the treatment program. While he was in Diagnostic, Movant was involved in an altercation with another inmate and struck that inmate with an improvised weapon consisting of a lock placed inside a sock.[3] At the motion hearing, Movant testified he knew at the time he pled guilty that only nonviolent offenders were eligible to participate in the treatment program.

DOC considered Movant's altercation with the other inmate at Diagnostic to be a "major conduct violation," placed him in administrative segregation for thirty days, did not place Movant into the treatment program, and wrote a letter to the trial court stating that Movant was no longer eligible for the treatment program and recommending that probation be denied on the grounds that Movant had committed an assault that caused a serious physical injury and resulted in the matter being referred for criminal prosecution. After receiving this correspondence from DOC, the trial court made the following docket entry: "Per correspondence from Department of Corrections, defendant's sentence amended rescending [sic] sentencing pursuant to 217.362 RSMo."[4]

Movant timely filed a *pro se* motion for post-conviction relief under Rule 24.035, the public defender was appointed, and the amended motion was filed. The judge who took Movant's guilty plea recused himself from the case and a special judge was appointed to handle the amended motion. After holding an evidentiary hearing, the special judge ("motion court") entered a judgment denying relief which attached and incorporated, *inter alia,* the following factual findings: 1) Movant did not prove there was any delay in his being placed into the treatment program; 2) Movant would have been placed into the treatment program but for his own misconduct; 3) Movant, not the sentencing judge or Movant's attorney, caused Movant's ineligibility for the treatment program; 4) the sentencing court followed the recommendation of DOC as promised; and 5) Movant did

---

3. Movant claimed he was acting in self-defense after having been slapped by the other inmate when Movant rejected the other inmate's demand to perform oral sex on him and that Movant had taken the weapon away from the other inmate.

4. No such amended sentence appears in the legal file, but it is undisputed that Movant did not participate in long-term treatment and was not placed on probation.

not prove that he would have refused to plead guilty and insisted on going to trial but for the claims in his motion. Based on these findings, the motion court concluded that no violation of Movant's rights had occurred and denied relief. This appeal of that denial timely followed.

### Standard of Review

This Court's review of a denial of a post-conviction motion under Rule 24.035 is limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 24.035(k); *Soto v. State*, 226 S.W.3d 164, 166 (Mo. banc 2007). The motion court's findings and conclusions are clearly erroneous only if, after review of the record, the appellate court is left with the definite and firm impression that a mistake has been made. *Soto*, 226 S.W.3d at 166. Movant has the burden to show by a preponderance of the evidence that the motion court clearly erred in its ruling. *Melton v. State*, 260 S.W.3d 882, 885 (Mo.App. 2008).

*Roberts v. State*, 276 S.W.3d 833, 835 (Mo. banc 2009).

### Discussion

If a plea of guilty is made pursuant to a plea agreement, that agreement is "binding upon both the State and the defendant." *Reed v. State*, 114 S.W.3d 871, 874 (Mo.App. W.D.2003) (citing *White v. State*, 84 S.W.3d 122, 125 (Mo.App. W.D. 2002)). "If that agreement is breached, the parties are returned to their pre-bargain status." *Reed*, 114 S.W.3d at 874 (citing *State v. White*, 838 S.W.2d 140, 142 (Mo.App. W.D.1992)).

In regard to whether probation would be granted pursuant to section 217.362, the trial court's promise to Movant was as follows.

Mr. Conley shall be placed into the drug, long-term drug treatment program, for, [sic] sentencing shall be pursuant to Chapter 217.362 of the Revised Statutes of Missouri. And the Court will follow any recommendations of the D.O.C. relative to release of Mr. Conley upon his successful completion of the Long–Term Drug Treatment Program.

In the instant case, the sentencing judge did exactly what he said he would do; he sentenced Movant pursuant to section 217.362 and then followed the recommendation of DOC. That recommendation was that Movant not be placed on probation because Movant's post-sentencing behavior had disqualified him from even entering the treatment program. Movant's allegation is not that the trial court failed to follow the terms of the plea agreement. Instead, Movant alleges his guilty plea was rendered involuntary because he was "misled" by the trial court into pleading guilty when the court did not "explain[ ] to [Movant] he could lose the promised opportunity for probation before even entering the program."

The trial court has a duty to ensure that a defendant's guilty plea is made voluntarily. Rule 24.02(c). A part of this duty involves informing the defendant of the direct consequences of his guilty plea. *Reynolds v. State*, 994 S.W.2d 944, 946 (Mo. banc 1999) (citing *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)). The direct consequences of pleading guilty are those set forth in Rule 24.02(b). *See Copas v. State*, 15 S.W.3d 49, 53 (Mo.App. W.D. 2000). Those consequences are:

1. The nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law; and

2. If the defendant is not represented by an attorney, that defendant has the right to be represented by an attorney at every stage of the proceedings against defendant and, if necessary, one will be appointed to represent defendant; and

3. That defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury and at that trial has the right to the assistance of counsel, the right to confront and cross-examine witnesses against defendant, and the right not to be compelled to incriminate himself or herself; and

4. That if defendant pleads guilty there will not be a further trial of any kind, so that by pleading guilty defendant waives the right to a trial.

Rule 24.02(b). The trial court is not required to inform a defendant of the "collateral" consequences of pleading guilty. Examples of such collateral consequences include parole eligibility, deportation, and the possibility that the defendant's probation may be revoked. *Brown v. State,* 67 S.W.3d 708, 710 n. 1 (Mo.App. E.D.2002); *Reynolds,* 994 S.W.2d at 946.

In analyzing Movant's claim, it is helpful to distinguish his situation from similar cases in which movants were allowed to withdraw their guilty pleas after having been denied probation due to their failure to complete court-ordered institutional treatment programs.

In *Reed, supra,* the plea agreement called for the defendant to be sentenced under section 217.378 to DOC's regimented discipline program ("boot camp"). *Reed,* 114 S.W.3d at 872. In explaining its sentence to the defendant, the trial court

said, "... *you will be called back in 120 days if you successfully complete [boot camp]." Id.* at 875 (bolding and italics in original). For some reason not made clear by the record on appeal, the defendant was deemed ineligible for boot camp and was never placed into the program. *Id.* at 873. The trial court did not tell the defendant at the time of his plea what would occur if the defendant did not qualify for boot camp. On appeal, the defendant successfully argued that his failure to be placed into boot camp was a violation of his plea agreement and rendered his guilty plea "invalid." *Id.*

In agreeing with that contention, the *Reed* court looked to *Brown v. Gammon,* 947 S.W.2d 437 (Mo.App. W.D.1997), for guidance, a case in which the defendant was sentenced to DOC's institutional drug treatment program pursuant to section 559.115.[5] In *Gammon,* the trial court had promised the defendant that he would have "an opportunity" to be placed on probation if he successfully completed the 120 day treatment program ordered by the court. *Gammon,* 947 S.W.2d at 439. The defendant in *Gammon* was only able to complete eleven weeks of the twelve week treatment program at issue before the 120 day "callback" period expired. The trial court denied probation on the basis that the defendant had failed to complete the program. *Id.* at 440. In his motion for post-conviction relief, the defendant argued that the trial court's refusal to grant probation rendered his guilty plea involuntary because he pled guilty believing he had been promised that his release onto probation would occur after 120 days if he completed the program. *Id.*

When considering whether a defendant pleaded guilty based on a mistaken belief about the sentence and plea agreement, "the test is whether a reasonable

---

5. This statute gives the trial court the authority to grant the defendant probation anytime up to 120 days after he has been delivered to DOC.

basis exists in the record for such belief." *McNeal v. State*, 910 S.W.2d 767, 769 (Mo.App.1995). This court will find that a reasonable mistake exists only if [the defendant]'s belief was based upon positive representations upon which he was entitled to rely. *Id.* Whenever considering a plea agreement, this court notes that plea bargaining is to be conducted fairly on both sides with the results not disappointing the reasonable expectations of either the accused or the state. *Lawson v. State*, 757 S.W.2d 646, 647 (Mo.App.1988).

*Id.* at 440–41. The Western District ultimately held in *Gammon* that the defendant was entitled to have his guilty plea set aside because his mistaken belief about what he had been promised was a reasonable one based on the trial court's use of the word "opportunity."

Unfortunately, the trial court did not clarify the "opportunity" it was affording [the defendant], leaving the agreement open to at least two different interpretations. On one hand, the plea agreement may have meant that the court would grant [the defendant] probation after 120 days in prison if he simply did what was necessary to complete the drug program. On the other hand, the agreement could have meant that [the defendant] had to successfully complete the program, as viewed in the discretion of the trial court, in order to qualify for probation at the end of the 120–day period. Whether the "opportunity" was the chance to be granted probation upon completion of the program or the chance to receive probation based on a subjective evaluation of [the defendant]'s performance in the substance abuse program is not clear. Since the agreement is open to two interpretations, it is ambiguous and [the defendant]'s guilty plea was based on a reasonable mistake of fact. Because [the defendant]'s mistake

was reasonable *and it was based on the positive representations of the court, upon which he was entitled to rely,* [the defendant]'s guilty plea has been rendered involuntary. *McNeal*, 910 S.W.2d at 769.

*Id.* at 441 (emphasis added).

In *Reed*, the Western District found that the trial court had clearly waived any discretion concerning the defendant's release it might otherwise have retained by "positively represent[ing] to [the defendant] that he would be released early if he completed the program and would serve his full sentence if he did not." *Reed*, 114 S.W.3d at 876. As a result, the court held that "[w]hen he was unable to enter the program, *through no fault of his own,* he lost the opportunity to perform his part of the plea bargain and thus ensure his early release." *Id.* at 876–77 (emphasis added). The court found the defendant's inability to be placed in boot camp under these circumstances constituted a "reasonable mistake of fact" and vacated the defendant's conviction with an order that he be afforded the opportunity to withdraw his guilty plea. *Id.*

Movant's situation is distinguishable from the two cases just discussed in two important ways: 1) Movant is not attacking any positive representation made by the sentencing judge; and 2) the circumstances that led to Movant's ineligibility for the treatment program were not beyond his own control. Movant claims not that the trial court told him something untrue, but that it "misled" him into pleading guilty by *not* explaining to Movant that he could lose his opportunity to complete the long-term treatment program before it even started. The word "misled" (or "mislead") is an action verb—it denotes a positive representation, not a passive failure to speak. Movant has cited no authority for

the proposition that a sentencing court has an affirmative duty to inform a defendant that he might be disqualified from participating in a treatment program before it starts, and we can find none. To the contrary, "a reasonable mistake exists only if [the defendant's] belief was based upon *positive representations* upon which he was entitled to rely." *Gammon*, 947 S.W.2d at 441 (emphasis added).

Perhaps more importantly, unlike the defendants in *Reed* and *Gammon*, Movant's disqualification from the treatment program was due to his own volitional conduct, not to some factor beyond his control. Movant's position would require a sentencing judge to anticipate all possible behavior a defendant might voluntarily engage in after his delivery to DOC and warn him about how such conduct might affect his probation eligibility. Such prescience is not required by either Rule 24.02(b) or our prior caselaw.[6]

■ Movant also failed to convince the motion court that he would have refused to plead guilty if the trial court had informed him that he might become ineligible for the treatment program before it started. "Unawareness of certain facts at the time of a plea does not necessarily render the plea unintelligent or involuntary." *State v. Pendleton*, 910 S.W.2d 268, 270 (Mo.App. W.D.1995). Movant's motion claimed that he would have insisted on going to trial if the sentencing court had given him the information he believes he was entitled to receive. Noting that Movant was facing the possibility of two consecutive fifteen year sentences if convicted of the charges

against him and sentenced as a persistent offender (Movant had at least two prior felony convictions), the motion court did not find this claim credible. We defer to the motion court's credibility determinations. *Watts v. State*, 248 S.W.3d, 725, 732 (Mo.App. S.D.2008); *Watson v. State*, 210 S.W.3d 434, 437 (Mo.App. S.D.2006).

Because Movant has failed to demonstrate that the motion court's findings and conclusions are clearly erroneous, its order denying post-conviction relief is affirmed.

BATES, P.J., and BARNEY, J., concur.

---

6. Such prescience would be especially impressive in a case where, as here, the offender's prior record gave no indication that he was predisposed to violence. Movant's motion also claimed that he remained at Diagnostic for an inordinate amount of time because the trial court failed to have him prescreened for eligibility for the treatment pro-

gram. Movant, however, failed to present any evidence in support of this claim at the motion hearing. *See Weekley v. State*, 265 S.W.3d 319, 324 (Mo.App. S.D.2008) ("The burden is on Movant to present substantial evidence to support the grounds asserted for post-conviction relief").