**Hairl JOHNSON, Movant/Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. ED 93541.**

Missouri Court of Appeals,
Eastern District,
Division Five.

Aug. 24, 2010.

Alexandra Johnson, St. Louis, MO, for Appellant.

Chris Koster, Attorney General, Dora A. Fichter, Assistant Attorney General, Jefferson City, MO, for Respondent.

MARY K. HOFF, Judge.

### Introduction

Hairl Johnson (Movant) appeals from the motion court's judgment denying his amended Rule 24.035[1] motion for post-conviction relief. On appeal, Movant argues that the motion court clearly erred because his plea counsel provided him ineffective assistance that impinged on the voluntariness and understanding of his guilty pleas. We reverse.

### Factual and Procedural Background

The State of Missouri (the State) charged Movant with four underlying drug-related counts. These counts stemmed from two separate incidents. First, regarding an incident occurring on February 15, 2001, Movant was charged with one class B felony count of second degree drug trafficking, in violation of Section 195.223[2], one class C felony count of possession of a controlled substance, in violation of Section 195.202, and one class A misdemeanor count of possession of drug paraphernalia, in violation of Section 195.233.[3] Second, regarding an incident occurring on May 8, 2001, Movant was charged with one class C felony count of possession of a controlled substance, in violation of Section 195.202.[4]

Pursuant to a negotiated written plea agreement[5] dated May 18, 2004, Movant

---

1. All rule references are to Mo. R.Crim. P.2009, unless otherwise indicated.

2. All statutory references are to RSMo 2000, unless otherwise indicated.

3. In the State's information, these three counts are delineated as Cause No. 011–1200.

4. In the State's information, this count is delineated as Cause No. 011–1691B.

5. Because Movant was pleading guilty to

agreed to plead guilty to all four of the above-mentioned counts in exchange for the State's promise to refrain from proving he was a prior and persistent drug offender and to instead recommend to the plea court that Movant receive concurrent sentences of fifteen years imprisonment on each felony count. Had Movant gone to trial and lost, the State would have proffered evidence that Movant was a prior and persistent offender, and Movant likely would have faced a maximum sentence of life imprisonment without the possibility of parole. At the guilty plea and the subsequent sentencing hearing, both held on May 18, 2004, the plea court accepted the parties' written plea agreement and sentenced Movant to three concurrent fifteen-year prison terms for each felony count and an additional concurrent one-year prison term for the sole misdemeanor count. During the sentencing hearing, the plea court also stated on the record:

> By agreement of the State and the defendant, the Court further orders the defendant be granted credit toward his sentence for the time he spent on bond in the above referenced cases. The Court has signed a separate order to that effect.[6]

The plea court verbalized this bond-credit understanding after it had initially indicated that it would accept the terms agreed upon in the written plea agreement and after Movant stated on the record that he was pleading "guilty." The terms of the written plea agreement contained no

provision mentioning or incorporating this secondary understanding to grant Movant credit for the time he spent on bond, and it expressly provided that it "constitute[d] the entire agreement between [Movant] and the State of Missouri."

Notwithstanding the plea court's order, the Missouri Department of Corrections did not credit Movant for the time he had spent on bond. Thus, Movant subsequently filed a *pro se* motion for post-conviction relief under Rule 24.035 on August 18, 2004. Counsel was appointed and filed an amended motion on Movant's behalf on November 24, 2004. In his amended motion, Movant claimed that he was denied effective assistance of counsel because, in choosing to plead guilty, he relied on positive, incorrect representations made by his plea counsel, the state, and the plea court that he would be granted jail time credit for time spent on bond. Accordingly, Movant contended that his reliance on these positive representations produced a mistaken belief as to his sentence that rendered his guilty plea unknowing and involuntary.

After conducting an evidentiary hearing in which both Movant and his plea counsel testified, the motion court denied Movant's amended motion for post-conviction relief.[7] This appeal follows.

## Standard of Review

Our review of the motion court's denial of post-conviction relief pursuant to Rule

---

charges filed under two different charging documents and two different cause numbers, two written plea documents were executed. These two documents incorporated each other by reference and constituted the "written plea agreement" mentioned above.

6. Because Movant was pleading guilty to charges filed under two charging documents and two different cause numbers, the record contains two written orders to this effect. Both written orders contain identical lan-

guage: "By agreement with the State and defense, the Court hereby orders that the defendant be granted credit toward his sentence for time spent on bond in the above-styled cause."

7. The record indicates that the evidentiary hearing was held on June 10, 2005, but that Movant's amended motion was not denied until July 20, 2009. It is not clear from the record or from the parties' briefs the reason for this four-year delay.

24.035 is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. Rule 24.035(k). Findings and conclusions are clearly erroneous if, upon review of the record, we are left with a "definite and firm impression that a mistake has been made." *Roberts v. State*, 276 S.W.3d 833, 835 (Mo. banc 2009). Movant bears the burden of proving by a preponderance of the evidence that the motion court erred in its ruling. *Id.*

## Discussion

In his sole point on appeal, Movant contends that the motion court erred in denying his amended motion because he was deprived of effective assistance when his plea counsel misinformed him as to the availability of jail time credit for time spent on bond and when his plea counsel, the state, and the plea court all affirmatively represented to him that he would receive such bond time credit as a part of his plea agreement.

■ To prevail on an ineffective assistance of counsel claim, Movant must demonstrate (1) that his plea counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and (2) that his plea counsel's deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Roberts*, 276 S.W.3d at 836. A defendant who pleads guilty waives all claims of error except those affecting the voluntariness of the plea or the understanding with which the plea was made. *Roberts*, 276 S.W.3d at 836. To satisfy the prejudice requirement, a defendant who has pleaded guilty must demonstrate that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on

going to trial. *Redeemer v. State*, 979 S.W.2d 565, 569 (Mo.App. W.D.1998).

■ "The validity of a plea of guilty depends on whether it was made voluntarily and intelligently." *Reynolds v. State*, 994 S.W.2d 944, 946 (Mo. banc 1999). A plea of guilty is not made voluntarily "if the defendant is misled, or is induced to plead guilty by fraud or mistake." *Roberts*, 276 S.W.3d at 836. The defendant must enter the guilty plea with sufficient knowledge of its direct consequences. *Reynolds*, 994 S.W.2d at 946.

■ Direct consequences are those which "definitely, immediately, and largely automatically follow the entry of a plea of guilty." *Huth v. State*, 976 S.W.2d 514, 516–17 (Mo.App. E.D.1998). It is well settled in Missouri that both the trial court and a defendant's plea counsel have a duty to inform such defendant of the direct consequences of pleading guilty, but neither has a duty to advise such defendant of a guilty plea's collateral consequences. *Id.* at 516. In *Redeemer*, the Western District held that "[k]nowledge that a criminal defendant will not receive credit for the time that he or she was free on bond ... is not a direct consequence of pleading guilty," thus a defendant's plea counsel will not be found to be ineffective for failing to advise the defendant as to the unavailability of such credit. 979 S.W.2d at 573.

■ Movant in this case, however, does not claim that his plea counsel merely neglected to inform as to the non-availability of bond time credit. Rather, Movant's claim contends that all parties involved— his plea counsel, the State, and the plea court—erroneously misinformed him that he would receive, as a part of his entire plea agreement, jail time credit for the time he was free from custody on bond. *See State v. Williams*, 978 S.W.2d 454, 460 (Mo.App. E.D.1998) (holding that because

Sections 558.031 and 559.100 limit credit toward the services of a sentence of imprisonment to time in prison, jail, custody, or periods of probation or parole, a defendant is *not* entitled to jail time credit for time while free from custody on bail). In cases where counsel affirmatively misinforms a client about *any* consequence of pleading guilty, direct or collateral, and thereby causes such client to possess a mistaken belief regarding his sentence, the critical "test is whether a reasonable basis exists in the record for such [a mistaken] belief." *Conley v. State*, 301 S.W.3d 84, 88–89 (Mo.App. S.D.2010). Missouri courts may find that a defendant's mistaken belief about his sentence impinged his ability to enter a guilty plea with sufficient voluntariness and understanding if (1) the mistake is reasonable and (2) the mistake is based upon a positive representation upon which the defendant was entitled to rely. *Dobbins v. State*, 187 S.W.3d 865, 866 (Mo. banc 2006).

■ Furthermore, because Movant raises this issue of mistaken belief in the context of an ineffective assistance of counsel claim, he must also demonstrate that it was objectively unreasonable for his plea counsel to so advise him and that, but for his counsel's incorrect advice, there is a reasonable probability that he would have chosen to go to trial rather than plead guilty. *Savage v. State*, 114 S.W.3d 455, 458 (Mo.App. E.D.2003) (holding a defendant may be deprived of ineffective assistance where his plea counsel affirmatively misinforms him as to a consequence of pleading guilty); *State v. Abernathy*, 764 S.W.2d 514, 516 (Mo.App. S.D.1989) (holding that where counsel renders erroneous advice to a criminal client and the client enters a guilty plea, the voluntariness of the plea depends on whether advice was within the range of competence demanded of attorneys in criminal cases and whether the client was prejudiced).

We find two cases—*Pettis v. State*, 212 S.W.3d 189, 191–95 (Mo.App. W.D.2007), and *Brown v. Gammon*, 947 S.W.2d 437, 438 (Mo.App. W.D.1997)—aid our analysis in this case. In *Pettis*, both the defendant and the trial court possessed mistaken beliefs attributable to an affirmative, yet erroneous, representation by plea counsel as to the consequences of the defendant's sentence. There, the trial court considered whether to impose a consecutive or concurrent sentence in exchange for the defendant's plea of guilty to one count of possession of a controlled substance within a correctional institution. *Pettis*, 212 S.W.3d at 191–95. During the defendant's sentencing hearing, the court asked the defendant's plea counsel about the effect a consecutive four-year sentence would have on the defendant's parole-eligible life sentence that he was already serving. *Id.* at 194. The defendant's plea counsel affirmatively represented on the record that a consecutive sentence would not transform the defendant's prior sentence into life without the possibility of parole. *Id.* at 194. This representation was incorrect and ignorant of the Board of Probation and Parole's rule that, upon imposition of a consecutive term of imprisonment, the defendant's parole-eligible life sentence would definitely, immediately, and automatically convert to a sentence of life without possibility of parole. *Id.* at 194. Thus, when the trial court sentenced the defendant to a consecutive sentence of four years, his parole opportunities were foreclosed, and he sought post-conviction relief, which was denied. *Id.* at 192–94. On appeal, the Western District held that both the defendant and the trial court possessed a mistaken belief that his parole eligibility would not be entirely extinguished by the imposition of a consecutive sentence and that the representations made by the de-

fendant's counsel constituted ineffective assistance, which prejudiced his defense. *Id.* at 194–95. Accordingly, the Western District reversed the motion court's judgment denying Pettis's post-conviction relief and remanded the case with directions for the trial court to re-sentence him. *Id.* at 195.

In *Brown,* the defendant petitioned for habeas corpus, contending that he was being detained unlawfully because his guilty plea was involuntary. There, the trial court promised the defendant an "opportunity" to be placed on probation if he pleaded guilty to a sentence of twenty years and completed a court-ordered substance abuse program within a 120–day window rather than accept the twelve-year sentence recommended by the State. *Brown,* 947 S.W.2d at 441. The Board of Probation and Parole evaluated the defendant's performance in the program. *Id.* at 440. The Board reported to the trial court that the defendant would only be able to complete eleven weeks of the full twelve-week program prior to the end of the 120 days. *Id.* at 440. The defendant's inability to complete the program was not attributable to anything other than lack of time. *Id.* at 440. In fact, the defendant had received a "fair" rating. *Id.* at 440. Based on this report, the trial court denied the defendant probation at the end of the 120–day period. *Id.* at 440. The defendant then argued that the trial court's decision to deny him probation impinged upon the voluntariness of his guilty plea "because his plea rested on the trial court's promise to release him after 120 days if he completed the program." *Id.* at 440. The Western District agreed. It explained that the trial court neglected to clarify the "opportunity" it was affording to the defendant. *Id.* at 441. The defendant did not understand that the granting of probation at the end of the 120 days was entirely within the discretion of the trial court and that there could be no

binding agreement entitling him to probation. *Id.* at 441. Thus, the Western District held that the defendant possessed a reasonable mistaken belief as to his sentence, a belief attributable to positive representations of the trial court upon which he was entitled to rely. *Id.* at 441. Because this mistaken belief rendered the defendant's guilty plea involuntary, the Western District vacated the defendant's judgment and sentence and remanded the case so that he would have an opportunity to withdraw his plea. *Id.* at 441.

■ Movant's circumstances are similar to those of the defendants in *Pettis* and *Brown.* Here, the positive representations upon which Movant was entitled to rely prompted his mistaken belief regarding the consequences of his guilty plea. Here, the positive representations made to Movant suggesting that bond time credit was a permissible component of his plea agreement were incorrect. *See Williams,* 978 S.W.2d at 460. These representations were articulated clearly on the record and memorialized in two written court orders. Given the plea court's pronouncement that he would receive credit toward his sentence for the time he spent on bond, Movant's mistaken belief that the law permitted him to obtain such credit was reasonable.

■ Moreover, Movant's plea counsel rendered him ineffective assistance by representing that such a bond credit agreement was possible and by facilitating this agreement during Movant's guilty plea negotiations when Missouri law clearly provided that defendants may not receive such credit. On the record, Movant's plea counsel admitted that he was not sure if the law permitted the plea court to grant jail time credit for time on bond. "By any objective measure, a reasonably competent attorney would not make such a represen-

tation when he or she had no knowledge of the consequences." *Pettis*, 212 S.W.3d at 194. Also, the prejudice to Movant in this case is clear. The record reflects that Movant's decision to plead guilty rested on his mistaken belief that both the written agreement and the bond credit agreement would be honored. Because Movant's bond credit agreement cannot be honored under the law, we cannot say that his guilty pleas were entered voluntarily. Point granted.

For these reasons, we find that motion court erred in denying Movant post-conviction relief. "If a defendant is misled or induced to enter a plea of guilty by ... mistake, ... then the defendant should be permitted to withdraw the plea." *Dobbins*, 187 S.W.3d at 867; *see also Brown*, 947 S.W.2d at 441. Thus, because Movant was reasonably mistaken as to the terms of the entire plea agreement, the causes are remanded to the trial court to provide Movant the opportunity to withdraw his guilty pleas.

### Conclusion

The motion court's judgment denying Movant's amended motion for post-conviction relief is reversed. The causes shall be remanded to the trial court to provide Movant the opportunity to withdraw his guilty pleas.

GARY M. GAERTNER, JR., Presiding Judge, and PATRICIA L. COHEN, Judge, Concur.