### Nathan D. WILHITE, Appellant,

v.

### STATE of Missouri, Respondent.
#### No. WD 72058.

Missouri Court of Appeals, Western District.

April 12, 2011.

---

3. We offer no opinion as to whether a remedial writ should issue.

Margaret M. Johnston, for appellant.

Mary H. Moore, for respondent.

Before Division Two: KAREN KING MITCHELL, Presiding Judge, JOSEPH M. ELLIS, Judge and VICTOR C. HOWARD, Judge.

VICTOR C. HOWARD, Judge.

Nathan Wilhite appeals the denial of his Rule 24.035 motion after an evidentiary hearing. On appeal, Wilhite claims that the motion court clearly erred in denying his motion because his guilty pleas were not knowingly, intelligently, and voluntarily entered in that his plea agreement with the State was breached when he was not placed in the Department of Corrections Sex Offender Assessment Unit. The judgment of the motion court is affirmed.

### Factual and Procedural Background

On November 14, 2007, Nathan Wilhite entered guilty pleas to three counts of the class B felony of child molestation in the first degree.[1] Pursuant to the plea agreement, the State agreed to dismiss two counts of statutory sodomy and agreed

---

1. Pursuant to section 566.067.1, RSMo Cum. Supp.2010, "[a] person commits the crime of child molestation in the first degree if he or she subjects another person who is less than fourteen years of age to sexual contact."

that Wilhite would be sentenced to twelve years on each remaining count, to run concurrently. The parties also agreed that a sentencing assessment report ("SAR") would be generated to determine whether Wilhite would qualify for sentencing under section 559.115, RSMo Cum.Supp.2010. At sentencing, the SAR showed that Wilhite qualified for sentencing under section 559.115. This meant that Wilhite would enter the Sex Offender Assessment Unit ("SOAU"), and the court would later determine whether Wilhite should be released on probation. On April 15, 2008, the court determined that it would be an abuse of discretion to release Wilhite on probation and ordered the execution of his twelve-year sentence.

Wilhite thereafter filed a Rule 24.035 motion. In his motion, Wilhite alleged that his right to due process was violated when he was not physically placed in the SOAU as negotiated by the parties. He alleged that he did not receive a full and fair opportunity to comply with the program in order to receive the opportunity to be placed on probation.

An evidentiary hearing was held on Wilhite's 24.035 motion. At the hearing, psychologist Michael Crownapple testified that the function of the SOAU was to perform an in-depth assessment of sex offenders for the purpose of assessing their risk of reoffending and amenability to treatment. Denver Bell, a caseworker at the Fulton Reception and Diagnostic Center, testified that Wilhite was placed in administrative segregation because he was formerly employed by the Department of Corrections. Although the SOAU is housed in Farmington, Missouri, Wilhite was transferred to Bonne Terre, Missouri, and was assessed there.

Carlos Sampson, a caseworker in the SOAU in Farmington, went to Bonne Terre and performed a suicide assessment, a personality assessment inventory, and a pre-test to determine how much Wilhite knew about sex offender therapy. He also provided Wilhite with workbooks to complete. Michael Ruberton, a therapist in the SOAU, also traveled to Bonne Terre to assess Wilhite. When Ruberton met with Wilhite, he conducted a HARE interview, which assesses the offender's level of psychopathy, and administered a Static 99, which assesses the offender based on factors such as age and marital status. Ruberton used the results of all the tests performed to generate a report. Ruberton found that, based on the assessment results, Wilhite had a low risk of reoffending and would be able to undergo treatment in a community setting, meaning that he could be released on probation. Ruberton's report was then passed on to the Probation and Parole Department. Roy Bearden, a parole officer at the Bonne Terre facility, interviewed Wilhite. After receiving Ruberton's report, Bearden reviewed the SOAU report and generated his own report. Bearden recommended that probation be denied, and he filed his report with the court.

After the evidentiary hearing, the motion court issued its findings of fact and conclusions of law. The court found that because Wilhite was previously employed as a correctional officer in the Department of Corrections, he was placed in administrative segregation for his own protection and was not physically placed in the facility where the SOAU is housed. However, the court found that representatives of the SOAU traveled to Bonne Terre to meet with Wilhite and that Wilhite received the same assessment he would have received at the SOAU in Farmington. A personality assessment inventory, the HARE checklist, and the Static 99 assessment were all administered. The results showed that Wilhite did not exhibit any

significant psychopathic traits and that he was in the low-risk category for reoffending. Therefore, the results were generally favorable to Wilhite. The court also found that a parole officer generated a report that was generally unfavorable to Wilhite and recommended against Wilhite's release on probation.

Based on these findings, the motion court concluded that Wilhite was not prejudiced by the mere fact that his assessment occurred in a different facility rather than in the SOAU itself. The psychological assessments of Wilhite portrayed him in a favorable light, and the physical location of the evaluation had no effect on the overall results. The motion court determined that Wilhite's right to due process was not violated and that the plea agreement was not breached because he received both the sentence and the sex offender assessment as contemplated by the plea bargain. Therefore, the motion court denied Wilhite's Rule 24.035 motion. This appeal by Wilhite followed.

## Standard of Review

■ Appellate review of a motion court's ruling on a Rule 24.035 motion is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. Rule 24.035(k). The findings and conclusions of the motion court are deemed clearly erroneous only if a review of the entire record leaves the appellate court " 'with a definite and firm impression that a mistake has been made.' " *Harper v. State*, 256 S.W.3d 220, 222 (Mo.App. W.D.2008) (quoting *Day v. State*, 143 S.W.3d 690, 692 (Mo.App. W.D.2004)). "The motion court is not required to believe the testimony of a movant or any other witness at an evidentiary hearing even if uncontradicted, and an appellate court must defer to the motion court's determination of credibility." *Proctor v. State*, 809 S.W.2d 32, 36 (Mo. App. W.D.1991).

## Discussion

■ In his sole point on appeal, Wilhite contends that the motion court clearly erred in denying his Rule 24.035 motion because his guilty plea agreement was breached when he was not placed in the facility where the SOAU was housed. He argues that he is entitled to be resentenced and placed in the SOAU or to have his guilty pleas vacated.

■ A guilty plea made as a result of a plea agreement is binding upon both the State and the defendant. *Reed v. State*, 114 S.W.3d 871, 874 (Mo.App. W.D.2003). If the plea agreement is breached, the parties are returned to their pre-bargain status. *Id.* Wilhite's primary argument is that the plea agreement was breached when he was not physically placed in the Farmington facility where the SOAU is run due to his former employment with the Department of Corrections. Wilhite contends that *Reed* is directly on point. In that case, the defendant agreed to plead guilty, and the State agreed that the defendant would enter a "boot camp" program and would be released on probation if he successfully completed the program. *Id.* at 872. However, the Department of Corrections failed to place the defendant in the program. *Id.* This court held that when the defendant was unable to enter the program, through no fault of his own, the parties' plea agreement had been breached. *See id.* at 876–77.

Wilhite's reliance on *Reed* is misplaced. The defendant in *Reed* was completely unable to participate in the program he was supposed to enter.[2] The evidence at the

---

2. In his reply brief, Wilhite cites to a recent case from the Southern District which is very

hearing on Wilhite's motion demonstrates that members of the SOAU traveled to his place of custody in Bonne Terre and administered each test that is required to complete an assessment pursuant to the SOAU program. Therefore, Wilhite was able to participate in the assessment program, despite being at a location other than the facility where the SOAU was housed.

As to the manner in which the assessment was completed, Wilhite argues that the program was "rushed" and that he did not receive the benefit of a full evaluation. However, the SOAU representatives testified that they administered each test necessary to complete an assessment of Wilhite. Additionally, Crownapple testified that there were special time constraints involved because SOAU staff had to travel to meet with Wilhite. Although this created an inconvenience for SOAU staff, he testified that it did not affect the quality of the assessment or the final reports. Finally, we note that the results of the assessments performed by SOAU staff were ultimately favorable for Wilhite, and Ruberton recommended that he be released on probation.

In his sole argument regarding Bearden's report, which recommended that probation be denied, Wilhite claims that Bearden's report was generated prior to the completion of his assessment by SOAU staff.[3] A report by Bearden dated March 25, 2008, was admitted as an exhibit at the hearing on Wilhite's motion. This date was prior to the date on which Wilhite was fully assessed by SOAU staff. However, Bearden testified that the report dated March 25 was incomplete and was not the report he submitted to the court. A second exhibit, dated April 11, 2008, was submitted at the hearing. It included both Ruberton's report after the SOAU assessment had been completed and a report from Bearden. Bearden testified that this was the report he submitted to the court. Moreover, the April 11 report contained differences from the March 25 exhibit and made specific references to and directly quoted Ruberton's report. Therefore, the evidence demonstrated that Bearden did not generate his final report prior to receiving and reviewing the SOAU report.

There was ample evidence in the record from which the trial court could conclude that Wilhite received a full assessment from SOAU staff as contemplated by the plea agreement despite not being physically placed in the facility where the SOAU was housed. Therefore, the motion court did not clearly err in finding that the parties' plea agreement was not breached and in denying Wilhite's Rule 24.035 motion.

The judgment of the motion court is affirmed.

All concur.

---

similar to *Reed. See State v. Bryan*, 335 S.W.3d 1 (Mo.App. S.D.2010). Like the facts of *Reed*, the factual circumstances in *Bryan* are distinguishable where the defendant, through no fault of his own, was denied entry into the SOAU in that he did not receive any assessment at all, which was contrary to his plea agreement. *Id.* at 5–6.

3. Bearden testified that he could not complete his report until he had received and reviewed the SOAU report.