Kevin E. CHRISMAN, Movant–Appellant,

v.

**STATE of Missouri, Respondent–Respondent.**

**No. SD 29215.**

Missouri Court of Appeals, Southern District, Division Two.

July 21, 2009.

---

Margaret M. Johnston, Columbia, MO, for Appellant.

Chris Koster, Attorney General, and James B. Farnsworth, Assistant Attorney General, Jefferson City, MO, for Respondent.

DON E. BURRELL, Presiding Judge.

Kevin Chrisman ("Movant") appeals the denial of his amended Rule 24.035 motion seeking post-conviction relief on the grounds that his guilty plea was "involuntarily, unknowingly, and unintelligently made when he was placed in the position of going forward with trial without having been given the means to prepare for trial through access to legal materials." Finding no merit in Movant's claim, we affirm the denial but remand the case so that a clerical omission in the underlying sentence and judgment may be corrected.

### I. Factual and Procedural Background

Construed in favor of the motion court's decision, *Rousan v. State,* 48 S.W.3d 576, 579 (Mo. banc 2001), the facts are as follows. Movant was charged with driving while intoxicated ("DWI"—*see* section 577.010 [1]), driving while revoked

---

**1.** Unless otherwise indicated, all statutory references are to RSMo 2000 and all references

("DWLR"—*see* section 302.321), and resisting arrest *(see* section 575.150[2]). Movant was arrested and incarcerated in the Camden County jail. On the day of his arraignment, Movant told the court he wanted to proceed *pro se.* Three days later, on March 25, 2004, Movant appeared before the court and allegedly verbally requested access to the "law library, access to materials to make copies of legal works, and a case number." Movant claimed he made this request because in the Camden County jail he was only given access to Westlaw for one hour at a time and, due to the fact that there was only one computer at the jail that was shared by all inmates, this limited his Westlaw use to about one hour per week. Further, he stated that although there was "a law library at the facility, [he] was denied extra time to access and collect the evidence as needed to defend [himself] properly." Movant said he brought these matters to the attention of the court, but his requests were nonetheless denied.[3]

On April 6, 2004, Movant filed a *pro se* motion seeking a dismissal of the charges against him, alleging, *inter alia,* that the court's denial of "extra time to access" the law library "eliminated any proper action [he] could take to defend [himself]."

On April 19, 2004, Movant appeared before the court and requested that counsel be appointed to represent him at his upcoming preliminary hearing. The court appointed the public defender's office to represent Movant. On May 3, 2004, Movant appeared at his preliminary hearing with appointed counsel and the court granted Movant until May 17, 2004, to file an amended motion to dismiss. After that

deadline had passed, Movant filed a *pro se* first amended motion to dismiss. In his amended motion, Movant stated in pertinent part:

As I had proceeded as far as I could due to the hendrances [sic] imposed on me by the information herein I did on 4–19-04 request assistance of counsel for accessability [sic] reasons. On 5–03–04[,] I was granted time to file an [a]mended [m]otion to [d]ismiss. On 5–14-04[,] I was informed that counsel could not help me with my amended motion, per rules of the court. I therefore have no co-counsel nor assistance of counsel by these actions made by the court.

Four days later, Movant and his appointed counsel again appeared before the court and counsel notified the court that after "reviewing the issues [and] cases [Movant] had requested he review[,] ... he was not filing an amended motion to dismiss, but would request that [Movant] be allowed to address the [c]ourt as to his motion." The court allowed Movant to address the court, and on June 1, 2004, the court, by docket entry, ruled "[Movant's] pending motion to dismiss and/or amended motion to dismiss is/are overruled." Appointed counsel filed a motion to withdraw at Movant's request, and was allowed to withdraw.

According to Movant, he asked appointed counsel to withdraw because of a "discrepancy" they had over Movant's rights. When asked if he was satisfied with appointed counsel's representation at the preliminary hearing, Movant responded, "he did try to ask decent questions, but he

to rules are to Missouri Court Rules (2009).

**2.** The resisting arrest count in the information is completely blacked-out; a practice not to be encouraged.

**3.** According to Movant's motion to dismiss, the trial judge told him: "Your actions are ludicris [sic] and these things are not available, I don't care how you do it but if you have anything to file-file it with the Prosecuting Attorney's office."

didn't really dig into anything. I mean, he went through a formality more [sic] I felt." Following appointed counsel's withdrawal, the court appointed another attorney to represent Movant. On June 14, 2004, Movant and his newly appointed counsel appeared before the court and Movant entered a plea of not guilty to all charges against him and again requested to proceed *pro se*. Movant acknowledged the risk of *pro se* representation, and the court granted appointed counsel's request for leave to withdraw. On two more occasions prior to the date of Movant's guilty plea, the court appointed Movant counsel. Each time, Movant requested that they withdraw and counsel obliged. Movant does not claim that any of his appointed attorneys provided him with ineffective assistance.

On June 22, 2004, Movant filed a request for change of venue. On July 14, 2004, Movant again filed his first amended motion to dismiss and a "motion to dismiss for failure to state offense." On August 17, 2004, Movant filed a document entitled "judicial notice" with the court where he outlined the procedural posture of his case, incorporated his first amended motion to dismiss, and alleged other violations of his constitutional rights. On September 21, 2004, the court reviewed Movant's file and granted Movant's motion for change of venue, transferring the cause from Camden to Laclede County.

On September 28, 2004, a couple of days after being transferred from the Camden County jail to the Laclede County jail, Movant sent an "inmate request form" to the Laclede County jail stating that he was a *pro se* litigant and requesting the following two books: "MO Criminal Practice Forms—27" and "MO Crim. Practice—19." The jail indicated in the comments section of the form that it had forwarded the request to the sheriff and to the court and would let Movant know the answer when the judge responded to Movant's request. Two days later, Defendant sent a second request to the jail and the jail denied that request because the first request had already been sent to the court. That same day, Movant filed a "Motion for Evidentuary [sic] hearing" with the court. On October 15, 2004, Movant sent a third "inmate request form" to the jail, requesting the following:

On 9–30–04[,] I requested Law Books, Practice Forms 27, & Mo. Criminal Practice 19. I recieved [sic] a response stating my request had been sent to the circuit court. It is this facilities [sic] obligation to provide a law library not the court. "Complete denial of the means to prepare a defense, or unjustified interference with preperation [sic], is unconstitutional." *Milton v. Morris,* 767 F.2d at 1445–47. The "right to defend oneself" is protected by the Sixth Amendment. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

The jail again denied Movant's request, referring to its previous denial as its reasoning. It is unclear from the record whether Movant ever received the books he had requested. On November 16, 2004, Movant filed another "inmate request form," this time requesting the following:

On 11–12–04[,] I put in a request concerning some legal papers that require a notary public before they can be filed. I spoke with Laura yesterday, she said she was a notary but is no longer. Is there a notary for residents? As listed in my previous request these are legal papers and I am working with a set timetable.

The jail wrote in the comments section of the form the following: "The jail has no 'resident' notaries. Trying to coordinate with other offices within the sheriff's dept. No promises. Will let you know." It is

unclear from the record whether Movant met with a notary or how many other requests Movant filed. According to Movant, he was not allowed access to any legal materials while in the Laclede County jail.

On November 25, 2004, the parties appeared before the court to take up Movant's "judicial notice." The court denied the requested relief. On January 31, 2005, the parties again appeared before the court and the court heard argument on Movant's first amended motion to dismiss. The court again denied the motion. The court discussed with Movant his desire to waive counsel and Movant filed a written "waiver of right to assistance of counsel."

On February 3, 2005, the case was called for jury trial. After announcing the cause and the parties for the record, the court stated: "I've been advised today that the jury is outside the hearing of the court right now and they're prepared to come in and start this jury trial." The court then asked Movant if it was still his desire to waive his right to counsel and Movant advised the court he wished to proceed *pro se.* When asked if Movant had any pre-trial motions to take up, Movant stated:

> Yeah, I was going through some of my stuff. I found Federal Rules of Evidence, Rule 609, showing that if a conviction—or the time of release from prison or confinement on a conviction was ten years or more, that that stuff wasn't admissible. There's a few of the items here that [the prosecutor] has used in the enhancement deal that are well over ten years old. And also, there's the Morgan County, is back in the court under a writ of habeas corpus Rule 91, and all action has been stopped on it.

The court interpreted this statement to be a motion claiming that the Federal Rules of Evidence prevented the court from considering the referenced convictions. The court denied that motion. Thereafter, Movant, for the third time, moved for a dismissal based upon his first amended motion to dismiss. The court again denied this motion. At one point during the pre-trial discussions, the court asked the prosecutor if there were "any other pre-voir dire matters to be taken up[?]" After taking up those matters, the court again asked Movant if he wished to proceed *pro se* and asked Movant the following hypothetical question: "[I]f [the prosecutor] was willing to talk to you about a possible—some sort of agreed-upon disposition, would that be—would you be interested in such a thing?" The Movant responded in the affirmative to both requests and the prosecutor agreed to discuss the case with Movant. Thereafter, the court went off the record and allowed the prosecutor and Movant to discuss the matter privately.

When the parties returned to the courtroom, the proceedings were again placed on the record and the court stated to Movant that it was its understanding that an agreement had been reached between Movant and the State and asked Movant to describe that agreement. Movant stated that "[the prosecutor] has agreed to ... request that I be sentenced to four years on the driving while intoxicated, with one year run concurrent for the driving while revoked, and he would dismiss the resisting arrest." The court then asked Movant if that is what he wanted to do and Movant responded in the affirmative. The court then stated to Movant:

> You understand I'm not in the business to twist arms, [Movant]; it doesn't matter to me what you do today. We have a jury who's taken their time today, they're waiting outside, and we can easily bring them in. I wanted to make sure that you knew what you were getting yourself into today, and that's what we've endeavored to do since [the court] started dealing with you in this case, [Movant]. This is your decision to waive

your right to a jury trial and plead guilty; is that right?

Movant stated it was his desire to plead guilty. At the court's request, the prosecutor then stated what evidence would be presented if the case went to trial. After the prosecutor finished this recitation, the court asked Movant if he agreed that he was driving while intoxicated and Movant replied: "Yes, I was." The court then stated:

> [Movant], by pleading guilty, you're waiving certain rights. And I know you understand a lot of these rights because we went over a few of them, but I want to go through these again with you.
>
> By pleading guilty, you're waiving your right to trial by court or jury. If a jury, all 12 must agree to your guilt. The State would have a burden of proof beyond a reasonable doubt, that would be their burden. You would enjoy the presumption of innocence at trial.
>
> You'd have a right to subpoena witnesses, you'd have a right to confront and cross examine all State's witnesses. You'd have a right against self-incrimination, which means you wouldn't have to testify unless you wanted to. You have a right to an appeal, you have a right to use certain defenses.
>
> By pleading guilty, you're waiving all of those rights. Do you wish to waive your rights today, sir?

Movant replied: "Yes, sir." The court then asked Movant if any other promises or agreements (other than the orally an-nounced plea agreement) had been made to Movant to cause him to enter a guilty plea, to which Movant responded: "No, none at all." The trial court accepted his guilty plea and sentenced Movant to four years in the Department of Corrections on the DWI conviction and one year in the county jail on the DWLR conviction with the one-year sentence to run concurrent with the four-year sentence.[4] The court then advised Movant of his right to file a Rule 24.035 motion and asked if he understood the time limits involved. Movant responded, "Yes, sir, I have the forms and rules."

Thereafter, Movant filed his *pro se* motion to vacate, set aside, or correct the judgment or sentence. Counsel was appointed, and an amended motion was filed. At the evidentiary hearing on the amended motion, Movant testified he had requested counsel for his preliminary hearing because "[d]ue to lack of availability to [sic] legal materials, I felt that my access to the courts would be jeopardized and I thought maybe that it would be a little smarter avenue to try to use a public defender." Movant testified that he would not have requested counsel if the trial court had granted his March 25, 2004, request for access to a photocopier and more time in the law library. He stated that if he had been given access to legal materials, he "could have brought up things like the requirement under the Supreme Court Rule 37.35[5] showing that [he] was, in fact, right with [his] argument that proper

---

4. Under the plea agreement, the State also dismissed the resisting arrest charge and agreed that Movant's sentences would run concurrently. The judgment itself, however, does not indicate whether the sentences were to be served concurrently or consecutively. It is because of this clerical omission that the case is being remanded so that an amended judgment running the sentences concurrently as announced by the court at Defendant's plea and sentencing hearing may be entered.

5. Although Rule 37.35 does refer to the form and contents of an information, Rule 37 is entitled "STATUTORY AND ORDINANCE VIOLATIONS AND VIOLATION BUREAUS" and Rules 37.01 and 37.03 indicate that its application is limited to ordinance violations. Movant was not charged with an ordinance violation in this case.

procedures weren't ... followed" and that "the probable cause statement ... did not meet the criteria of constitutional law and that it was an unacceptable document to the [c]ourt." When asked if he had been provided access to the Federal Rules of Evidence prior to the evidentiary hearing, Movant replied that he had not.

Movant also testified that the judge's comment that the "jury" was waiting outside on the day his jury trial was scheduled to begin made him believe that he "had been given a 'homage[6] jury' and was denied [his] constitutional right to choose half of [his] jury. [Movant believed he] should have been allowed a voir dire and the opportunity to choose 6 of [his] 12 jurors." Movant testified that he did not think he was guilty of the charges against him and *was ready for trial.* (emphasis added). Movant then testified (when prompted by motion counsel) that he would have proceeded to trial *if* he had been allowed to do the legal research he believed was necessary to establish his defense. The testimony at issue was as follows:

> Q. Okay. After the preliminaries were taken care of, the Court asked you if you would at this stage consider pleading guilty despite your apparent intentions going into court that day. What was your response to the Court?
>
> A. I was at that point to—in a position where I had to consider—being's as [sic] we [sic] just pointed out the Court stated that federal rules didn't apply in the court, my constitutional rights couldn't be upheld and I—I had no defense. I mean, what else could I do?

> Q. *At the time that the Court asked you that question, did you feel prepared to go to trial?*
>
> A. *Yes, I was.*
>
> Q. As far as research and being able to—
>
> A. No. Not as far as that, but as far as the documented evidences that I had to present in my defense that were supplied by the prosecution, I felt that it was more than sufficient to show that the rights and privileges that were repeatedly given had, in fact, been violated and it was just—there—it's solid. I mean, it's their stuff.
>
> Q. *So if you believed you had a solid case, what was it that kept you from proceeding to trial that day?*
>
> A. *Fifteen years.*
>
> Q. Was it your opinion that you could or could not be successful based on your ability to or inability to research prior to trial?
>
> A. Oh, that was obvious, that I couldn't have been successful anyways [sic]. I was—I was going to get convicted whether my right—my evidence was written in black and white or—you know, I mean, there's—there was nothing I could do with it.
>
> I presented everything, the Court denied me on everything. My rights were violated, which was clearly established. They were continually violated, they were being violated at that very moment by the jury that I don't know where they came from. I mean—
>
> Q. Is it your testimony here today that you would have proceeded to trial

---

6. We are unsure whether Movant used this word to express the relationship between a feudal lord and his vassal, as an expression of high regard, as some sort of slang expression for a feeling that he was being "homered," or if Movant simply misspoke or was incorrectly quoted by the court reporter. *See* Merriam-

Webster's Collegiate Dictionary 594 (Frederick C. Mish ed., 11th ed.2003); *see also* UrbanDictionary.com, Homered Definition, http://www.urbandictionary.com/define.php?term=homered (last visited June 17, 2009) ("A situation when the home referees favor the home team over the visitors.").

had you had the necessary access to legal materials?

A. Yes, I would.

Q. *Based on that, do you feel that your guilty plea entered that day was voluntary or involuntary?*

A. *Involuntary, but necessary. Eleven years is a substantial incentive.* (emphasis added).

Movant then testified that he pled guilty so he could get to the Department of Corrections where he would have access to a library with legal materials. Movant admitted that he knew he would have had a right to appeal his conviction if he had been found guilty after a jury trial and that "[i]t could be taken in [the] context" that he had lied to the court by admitting his guilt, which he was now denying.

The motion court denied Movant's amended motion for post-conviction relief and made the following relevant findings:

Movant's fifth point is that his federal and state constitutional rights were violated by being denied access to legal materials. In the underlying criminal case, Movant was incarcerated from the time of his arrest until he entered his plea. Movant had multiple opportunities to have access to legal material through counsel. In fact, Movant appeared in court with an attorney. Other attorneys from the Missouri State Public Defender's Office entered their appearance for Movant but he quickly discharged all of them. Movant was advised against [sic] the hazards of proceeding without counsel but he chose to do so anyway.

This issue is similar to the issue addressed by the court in *State v. Rollie,* 585 S.W.2d 78 (W.D.Ct.App.1979). In that case, Rollie also chose to represent himself. Like Movant, Rollie was incarcerated pending trial. Following his conviction, Rollie appealed in part claiming that he was denied access to a law library. *Id.* at 87. The court noted that *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) was the leading case on an indigent accused's right of access to the courts by requiring authorities to provide prisoners with adequate law libraries. But the court went on to state that *Bounds* also pointed out that "... while adequate law libraries are one constitutionally acceptable method to assure meaningful access to the courts, our decision here ... does not foreclose alternative means to achieve that goal." *State v. Rollie* at 87 citing *Bounds v. Smith,* 97 S.Ct. at 1499.

In *Rollie,* the court cited the case of *U.S. v. West,* 557 F.2d 151 (8th Cir.1977) for an example of providing an alternative means of providing adequate access to the courts for prisoners. In *West,* the accused elected to represent himself and like Movant refused assistance from available counsel. On appeal the court determined that the defendant had an adequate opportunity to prepare his defense and "that the rule in *Bounds v. Smith* was satisfied by the accused having available adequate assistance from persons trained in the law." *State v. Rollie,* at 88 citing *U.S. v. West.* The court denied Rollie's claim stating Rollie "at all times had the readily available assistance of persons trained in the law to assist him." *State v. Rollie,* at 88. Like the appellant in Rollie, Movant had assistance of counsel available to him throughout the criminal case. For the forgoing reasons, the Court overrules Movant's fifth point.

Movant's sixth point is that his plea was involuntary as an accumulation of acts gave Movant a reasonable belief that trial would not be given fairly. A guilty plea is not involuntary even though the accused maintains his innocence so long as it represents a voluntary choice of alternatives available to

him. *Trehan v. State*, 872 S.W.2d 156, 160 (S.D.Ct.App.1994). Prior to Movant's plea, [the court] asked Movant if he wanted an opportunity to discuss a possible plea bargain with the prosecuting attorney and Movant said that he did. (Transcript pages 18–19). The court then goes off the record. When the court is back on the record Movant announces that there is a plea agreement. (Transcript page 20). The Court inquires of the plea agreement, asks Movant if that is what he wants to do and Movant answers in the affirmative. (Transcript page) The Court asked Movant if anyone had threatened or abused him to cause him to enter a plea of guilty and Movant answered in the negative. (Transcript page 33). The Court made a finding that Movant voluntarily, knowingly and intelligently waived his rights when pleading guilty. (Transcript page 34). Movant testified at the hearing of this cause that he pleaded guilty so that he could get to the Department of Corrections so he would have access to legal material. He also testified that he pleaded guilty because the terms of the plea bargain reduced the amount of time he could possibly receive if he had gone to trial. Movant's alternative was to go to trial and risk a greater sentence. Instead he reduced his exposure by pleading guilty. The [motion court] finds that based on the transcript of the plea and Movant's testimony at the hearing of this cause that he voluntarily entered his plea of guilty.

Movant now appeals the motion court's denial of post-conviction relief.

## II. Standard of Review

We review the motion court's findings and conclusions on a Rule 24.035 motion to determine whether they are clearly erroneous. Rule 24.035(k). Under the clearly erroneous standard, those findings and conclusions are presumptively valid and we will reverse only if (after reviewing the complete record) "we are left with the definite and firm impression that a mistake has been made." *Bantle v. State*, 165 S.W.3d 233, 235 (Mo.App. S.D.2005). "The motion court can believe or disbelieve any witness; we defer to its credibility decisions given its superior opportunity to assess the witnesses." *Berry v. State*, 214 S.W.3d 413, 415 (Mo.App. S.D.2007).

## III. Analysis

■ Movant's sole point on appeal claims that the motion court erred when it denied his amended motion for post-conviction relief because:

prisoners have a fundamental constitutional right of access to the courts that requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries, and [his] guilty plea was involuntarily, unknowingly, and unintelligently made when he was placed in the position of going forward with trial without having been given the means to prepare for trial through access to legal materials.

Movant contends "[t]he motion court's findings were clearly erroneous because the court is essentially forcing [Movant] to choose between two fundamental rights: his right to represent himself and his right to have access to legal materials." He avers that "[a] criminal defendant cannot be forced to accept counsel as his only means of access to legal materials to prepare his defense." Movant has cited no authority in support of the proposition that a failure by prison authorities to provide an incarcerated defendant with access to legal materials (assuming that is what happened here) renders a subsequent guilty plea involuntary.

■ "To be valid, a guilty plea must be knowingly, intelligently, and voluntarily

made." *Wilson v. State,* 26 S.W.3d 191, 195 (Mo.App. W.D.2000). "[A] guilty plea that is voluntary and knowing waives all non-jurisdictional defects and defenses." *Rivera v. State,* 106 S.W.3d 635, 640 (Mo. App. S.D.2003).

■■■ Missouri recognizes the right to self-representation implied into the Sixth Amendment to the United States Constitution. *State v. Black,* 223 S.W.3d 149, 153 n. 2 (Mo. banc 2007). In *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), the United States Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries *or* adequate assistance from persons trained in the law." *Lewis v. Casey,* 518 U.S. 343, 346, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (quoting *Bounds,* 430 U.S. at 828, 97 S.Ct. 1491) (emphasis added). *Bounds* did not establish a right to a law library or to legal assistance, but merely acknowledged the well-established right of access to the courts. *Lewis,* 518 U.S. at 350, 116 S.Ct. 2174. "In other words, prison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Id.* at 351, 116 S.Ct. 2174. The touchstone is "meaningful access to the courts" and, therefore, the inmate "must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.*

> He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.
>
> . . . .
>
> The tools *[Bounds]* requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Id.* at 351, 355, 116 S.Ct. 2174. "[T]he Constitution does not require that prisoners (literate or illiterate) be able to conduct generalized research, but only that they be able to present their grievances to the courts—a more limited capability that can be produced by a much more limited degree of legal assistance." *Id.* at 360, 116 S.Ct. 2174.

Further, the Supreme Court has disclaimed that *Bounds* provides any greater right than the "right to bring to court a grievance that the inmate wished to present." *Id.* at 354, 116 S.Ct. 2174. For example, "to suggest that the State must enable the prisoner to *discover* grievances, and to *litigate effectively* once in court" would be "[t]o demand the conferral of such sophisticated legal capabilities upon a mostly uneducated and indeed largely illiterate prison population [would] effectively ... demand permanent provision of counsel, which we do not believe the Constitution requires." *Id.*

Here, Movant was not denied meaningful access to the courts. Movant appeared before the court on nine separate occasions. On three of those occasions he appeared with appointed counsel. The court appointed Movant counsel on four separate occasions, once at Movant's request. It is

apparent from the record that Movant's first appointed counsel, at a minimum, "review[ed] the issues [and] cases Movant had requested he review" and he made a decision not to file an amended motion to dismiss. This belies Movant's claim that appointed "counsel could not help [him] with [his] amended motion, per rules of the court."

Movant was in the Camden County jail for approximately six months. During that time, Movant alleged he was given access to Westlaw for an hour at a time, but due to the fact there was only one computer that was shared by all inmates, he was only able to use Westlaw for about an hour per week. He also claimed to have had access to the law library in the Camden County jail, although he contends he was denied extra time to use that facility. During his incarceration in the Camden County jail, Movant filed *pro se* documents with the court on five separate occasions, including his: 1) motion to dismiss; 2) first amended motion to dismiss; 3) motion for change of venue; 4) first amended motion to dismiss (a second time) along with his motion to dismiss for failure to state an offense; and 5) "judicial notice" incorporating his first amended motion to dismiss.

Movant's motion for change of venue was granted, and he was thereafter transferred to the Laclede County jail. Movant was in the Laclede County jail approximately four months before he appeared before the court and entered his guilty plea. While in the Laclede County jail, Movant filed four "inmate request forms" with the jail, a motion for evidentiary hearing with the court, and personally appeared before the court on three separate occasions—once to argue his motion for "judicial notice," once to argue (again) his first amended motion to dismiss, and finally appearing on the day scheduled for his jury trial; the day he entered his guilty plea. Movant contends he was not allowed

access to any legal materials while in the Laclede County jail, but Movant did request two specific books and did directly quote from two cases in one of his "inmate requests forms." Further, on the day scheduled for Movant's trial, he referenced Rule 609 under the Federal Rules of Evidence and also "Rule 91" in his verbal pre-trial motions. After Movant entered his guilty plea, the court asked Movant if he understood that he had a time limit to abide by in filing a Rule 24.035 motion, to which Movant responded: "Yes, sir, I have the forms and rules."

At the evidentiary hearing, Movant denied that he had been able to access the Federal Rules of Evidence prior to his pleading guilty, despite referring to them in one of his pre-trial motions. The motion court was not required to believe Movant's claim that he was denied access to all legal materials while in the Laclede County jail and there was certainly evidence to suggest the contrary. *Berry*, 214 S.W.3d at 415.

Movant had access to the service of four public defenders who were appointed to represent him, and even if Movant desired to proceed *pro se* at trial, the record does not support that he was ever denied access to the courts. If anything, it supports the opposite finding. The court effectively ruled on Movant's first amended motion to dismiss four separate times (once via its incorporation into his motion for "judicial notice") and the record shows that his first appointed counsel had reviewed Movant's claims and decided not to file an amended version of that motion (implicitly because Movant had no viable claims). As the motion court pointed out in its findings, this court in *State v. Rollie*, 585 S.W.2d 78, 88 (Mo.App. W.D.1979), relying on the 8th Circuit's decision in *U.S. v. West*, 557 F.2d 151, 152 (1977), held that an alternative means of providing access to the courts is

accomplished "by the accused having available adequate assistance from persons trained in the law." Movant had readily available assistance of appointed counsel offered to him, but he chose to exercise his right to turn down that legal help and proceed *pro se.* Proceeding *pro se,* however, does not require that Movant "be able to conduct generalized research, but only [to] be able to present [his] grievances to the courts." *Lewis,* 518 U.S. at 360, 116 S.Ct. 2174. "Impairment of … litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of … incarceration." *Id.* at 355, 116 S.Ct. 2174.

Additionally, Movant testified to two separate reasons for his decision to plead guilty: (1) to get access to legal materials in the Department of Corrections; and (2) to reduce his sentence to four years from the possible maximum of fifteen years. As to the first reason, Movant would have had the same access to those materials whether he was sent to the Department of Corrections as the result of a guilty plea or after a conviction following a trial and Movant admitted he was aware of this before choosing to plead guilty. Moreover, if Movant had been transported to the Department of Corrections after a trial conviction, the issue of whether he had been denied adequate access to legal materials could have been raised in a direct appeal of that conviction without any question as to whether that contention had been waived as a result of his decision to plead guilty.

The motion court clearly believed, based on the second reason mentioned by Movant, that Movant knowingly and voluntarily pleaded guilty to avoid the risk of receiving an additional eleven years on his sentence. The question of which stated reason was the actual one was for the motion court to determine, and its finding

that it was to avoid the possibility of a harsher penalty is not clearly erroneous.

Finally, while we do not condone depriving a *pro se* defendant of access to legal materials, if, *arguendo,* any such deprivation occurred in this case, Movant has failed to show any prejudice resulting from it. The motion court's ruling denying post-conviction relief is affirmed.

PARRISH and RAHMEYER, JJ., Concur.