Herbert Alan **DODD, Jr.,**
Movant–Appellant,

v.

**STATE of Missouri, Respondent–**
**Respondent.**

**No. SD 30849.**

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 26, 2011.

Kent Denzel, Columbia, MO, for Appellant.

Chris Koster, Attorney General, and, Mary H. Moore, Assistant Attorney General, Jefferson City, MO, for Respondent.

DON E. BURRELL, Presiding Judge.

Herbert Alan Dodd, Jr. ("Movant") appeals the denial after an evidentiary hearing of his amended Rule 24.035[1] motion ("motion") seeking to vacate his guilty plea to a reduced charge of second-degree murder on the grounds that his plea counsel incorrectly advised him that certain evidence would not be admissible at his trial. Movant claims this improper advice rendered his guilty plea unknowing and involuntary and that, absent that ineffective assistance of counsel, Movant would not have pleaded guilty but would have insisted on going to trial on the State's original charge of murder in the first degree.[2] Be-

---

1. All references to Rule 24.035 are to Missouri Court Rules (2011).

2. Movant's point relied on reads as follows:

 The motion court clearly erred in denying [Movant's] Rule 24.035 motion because a review of the record leaves a definite and firm impression that he received ineffective assistance of counsel that rendered his plea involuntary, in violation of his rights to counsel and to due process of law under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 18(a) of the Missouri Constitution, in that plea

cause the motion court did not clearly err in finding that Movant's guilty plea was both knowing and voluntary, we affirm its denial of post-conviction relief.

## Background

Movant was originally charged with the class A felony of murder in the first degree for knowingly, after deliberation, causing the death of William E. Hammond ("Victim") "by beating him with a base ball [sic] bat[ ]" on or about December 4, 2000. *See* § 565.020.[3] The punishment for first-degree murder is "either death or imprisonment for life without eligibility for probation or parole, or release except by act of the governor[.]" § 565.020.1(1).

On July 18, 2005, with a group of 150 venirepersons standing by, Movant, pursuant to a negotiated plea agreement, entered a plea of guilty to the reduced charge of murder in the second degree. *See* § 565.021. The range of punishment for murder in the second degree is "a term of years not less than ten years and not to exceed thirty years, or life imprisonment." § 558.011. Unlike a person convicted of first-degree murder, a person convicted of second-degree murder remains eligible for probation or parole. *Id.;* § 565.020. The amended information alleged that Movant, on or about December 4, 2000, "either acting alone or knowingly in concert with others ... knowingly caused the death of [Victim] by beating him with a base ball [sic] bat."

*The Plea Hearing*

In support of his plea, Movant executed a written "PETITION TO ENTER PLEA OF GUILTY[.]" That petition was received into evidence by the plea court. In his petition, Movant, among other things, represented to the plea court that he was represented by a lawyer, that he had received a copy of the information ("Information"), that he had read the Information, that he had discussed it with his lawyer, and that he "fully underst[ood] every charge made against [him]." Movant represented in his petition that on December 4, 2000, he went to Victim's home to commit a burglary and that in the commission of the burglary, Victim "died as the result of being beaten with a bat." Movant represented in the petition that the only promises made to him in exchange for his guilty plea was that he would receive a sentence of "life in prison (with the possibility of parole) [ ] to the amended charge of murder in the second degree," and the prosecutor would "file no other charges against [him]."

Other relevant portions of Movant's written representations included:

14. Neither I, nor any of my friends or loved ones, has been mistreated, threatened, coerced, or forced in any manner by anyone to get me to plead guilty, nor were there any promises, inducements, or representations made except as set forth in paragraph 13 above [which stated that the charge would be

---

counsel incorrectly advised [Movant] that if he went to trial, he would not be able to present evidence that Christopher Hammond, the victim's son, told a police officer that he had attempted to deceive him when he said that he did not kill his father or agree with anyone to kill him, that he did not know who did, and that he could not tell the police the location of property that had been stolen from his father. Because his admission of an at-

tempt to deceive would have been admissible and would have provided a defense to first degree murder, the ineffective assistance of counsel that [Movant] received rendered his plea unknowing, unintelligent, and thus involuntary, because he would have gone to trial rather than plead guilty had he been correctly advised.

3. All statutory references are to RSMo 2000.

amended to second-degree murder, the State would agree to file no other charges against Movant, and Movant would receive life in prison with the possibility of parole].

15. I believe that my lawyer has done all that anyone could do to counsel and assist me, and I AM SATISFIED WITH THE ADVICE AND HELP HE HAS GIVEN ME.

16. I know that the [c]ourt will not permit anyone to plead GUILTY who maintains he is entirely innocent, and with that in mind and because I AM GUILTY and do not believe that I could be found innocent by a jury, I wish to plead GUILTY and respectfully reques [sic] the [c]ourt to accept my PLEA OF GUILTY.

17. My mind is clear, and I am not mentally ill. I am not under the influence of alcohol or drugs, and I am not under a doctor's care. The only drugs, medicines, or pills that I took within the past seven (7) days are: NONE

. . . .

19. I OFFER MY PLEA OF GUILTY FREELY AND VOLUNTARILY AND OF MY OWN ACCORD AND WIT [sic] FULL UNDERSTANDING OF ALL THE MATTERS SET FORTH IN THE INFORMATION AND IN THIS PETITION[.]

20. I have read, and my attorney has explained to me, this Petition to Enter Plea of Guilty, this 18th day of July, 2005.

[*Movant's signature* ]

Defendant

(All capitalization as in original.)

In that same document, Movant's plea attorney certified that he had explained the allegations in the Information to Movant, that he had fully investigated the circumstances of Movant's case, that he believed all of Movant's representations contained in the plea petition were true, and that he believed Movant's decision to plead guilty was "voluntarily and understandingly made."

At the plea hearing, in Movant's presence, the plea court read aloud the amended information charging Movant with second-degree murder. In reciting for the plea court a factual basis for Movant's guilty plea, the prosecutor stated the following. Victim was in a relationship with the mother of Movant's two children. Movant, with either a motive to kill or rob Victim, went to Victim's home with some other accomplices. Finding it empty, Movant went inside and began burglarizing the residence. The prosecutor then

> At some point during their efforts to rob [sic] the residence, [Victim] returned home and interrupted their robbery [sic], and then that [Movant] and/or the accomplices beat him violently with a baseball bat about the head, causing his death; that [Movant] ultimately took from the house numerous items that were stolen from [Victim] or his children that lived in the house, and those items were ultimately found inside of [Movant's] trailer.

[Movant] was also—there was a beer bottle that was left behind at the crime scene. Apparently [Movant] drank that beer bottle, left that beer bottle at the crime scene, and there was a mixture of DNA on that beer bottle that consisted of [Victim's] DNA and [Movant's] DNA, was found there at the crime scene where [Victim] was beaten to death.

[Movant] or—and/or the accomplices also drove off in a car that was owned by [Victim], and drove it off into the woods a short distance away from the home. And around that car was found three separate cigarette butts, each of those cigarette

butts contained DNA that was consistent, again, with [Movant's] DNA.

After this recitation by the prosecutor, Movant was placed under oath and testified as follows in response to questions from his attorney.

Q. [Movant], I'm going to hand you what's been marked as Defendant's Exhibit 1. Do you recognize that to be a Petition to Enter Plea of Guilty?

A. Yes, sir.

Q. And that is a petition form that you and I have looked at this morning; is that correct?

A. Yes, sir.

Q. The exhibit has some blanks on it and some spaces in which handwriting appears. In each of those spaces, is that either your or my handwriting?

A. Yes, sir.

Movant then acknowledged that he and his attorney had each signed the plea petition in each other's presence. Movant testified that he had read the entire document and that its contents were all "true, accurate, and complete[.]" He testified that he had originally been charged with first-degree murder and that although the State had waived the death penalty, Movant would have received life without the possibility of parole if he were convicted of that crime. Movant testified that the reduction in the possible punishment played a role in his decision to plead guilty. Movant testified that he heard the prosecutor's statements to the court about what the State believed the evidence would be at trial and he acknowledged that "each of those things are true[.]"

Movant also swore that he and his plea counsel had "talked about a number of defenses over the course of [Movant's various attorneys'] representation" and that he had no questions about those possible de-fenses. Finally, Movant provided the following testimony about his state-of-mind.

Q. All right. And you've had no drugs or medicines of any kind in the last seven days?

A. No, sir.

Q. Alcohol or anything of that sort?

A. No, sir.

Q. Okay. Has anybody threatened, or coerced you, or in any way tried to persuade you or any member of your family or your friends to enter this plea of guilty in any manner that you would consider, you know, wrong, improper, or any of those kinds of influences?

A. No, sir.

Q. Is this plea of guilty entered by you freely and voluntarily and of your own accord?

A. Yes.

The plea court accepted Movant's guilty plea to second-degree murder, finding it to have been knowingly and voluntarily made, and later sentenced Movant in accordance with the plea agreement to life in prison with the possibility of parole.

### The Motion Hearing

At Movant's request, the motion court took judicial notice of the contents of Movant's underlying criminal file. Plea counsel testified at the hearing that Christopher Hammond, Victim's son ("Son"), was also a suspect in Victim's murder and had taken a polygraph test. "Trooper Brannon" had administered that polygraph test, and his impression was that Son had been "deceptive" during the test.

Motion counsel then asked plea counsel to read out loud a portion of Trooper Brannon's written report.

Q. That paragraph that I am bracketing in particular, would you read that, please?

A. Sure. Trooper Brannon writes, apparently [Son] did admit to attempting to deceive the polygraph throughout the examination by controlling his breathing during the tests.

Q. And the questions he was asking—being asked was whether he killed his father?

A. Well, according to the report, Question: Do you know for sure who killed your dad? Answer: No. Question: Did you kill your dad? Answer: No. Question: Right now can you take me to any of the stolen items from the night your dad was killed? Answer: No. Question: Did you agree with anyone to kill your dad? Answer: No. Those were according to Trooper Brannon in his report of the relevant questions.

Plea counsel then testified that he discussed with Movant whether this information could have been used for impeachment purposes if Son were to testify against Movant at Movant's trial. Plea counsel testified that he and other members of Movant's defense team had researched the question and found that, with the exception of a federal case involving the Air Force that had "seemingly maybe opened the door just a little bit to the idea that polygraphs would be admissible[,]" plea counsel believed the polygraph results and discussions surrounding the test would not be admissible at trial. Plea counsel testified that he discussed with Movant "at some length" his belief that Son's admission would be very difficult to get into evidence over an objection by the State.

Movant also testified at the motion hearing. Movant's testimony was that plea counsel told him that Son's polygraph test results and the fact that Son had admitted being deceptive during the test would not be admissible at trial. Movant was then asked the following questions by motion counsel and gave the following replies.

Q. And the aspect that the discovery showed that [Son] had been deceptive about is [sic] denying who knew—if he knew who killed [Victim], denied killing [Victim] and did not know where the stolen items were, correct?

A. Yes, sir.

Q. And had [plea counsel] not told you that, what would you have done?

A. I would have rejected the plea and proceeded to trial.

Movant also testified that plea counsel had given Movant a copy of Trooper Brannon's report along with other materials plea counsel had obtained in pretrial discovery.

### The Motion Court's Findings

The motion court's findings, as relevant to Movant's claim on appeal, were that

[a]t the guilty plea hearing, Movant testified that he knew the nature of the charges, the nature of [the] sentence being offered (life with parole), that he had a right not to plead guilty, that he had a right to a jury trial at which he could confront witnesses, and that there would be no trial if he entered a plea. Movant admitted as part of the guilty plea that his plea was voluntary and his decision.

The motion court specifically found Movant's motion hearing testimony "not credible."

The motion court found that plea counsel had researched the question of the admissibility of Son's statements to Trooper Brannon and determined that they "probably would not be admissible." The motion court also found that Son's admissions were inseparable from the polygraph test itself and would not have been admissible at trial, citing *State v. Hall*, 955

S.W.2d 198, 207 (Mo. banc 1997), and that plea counsel had exercised reasonable professional judgment in determining that Son's admissions could not be relied on as a part of Movant's defense strategy. The motion court denied post-conviction relief, concluding that "[plea counsel] gave Movant correct advice. [Plea counsel] was not ineffective here."

## Standard of Review

Our review is limited to determining whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 24.035(k); *Conley v. State*, 301 S.W.3d 84, 87 (Mo.App. S.D.2010). "The motion court's findings and conclusions are clearly erroneous only if, after review of the record, the appellate court is left with the definite and firm impression that a mistake has been made." *Id.* We defer to the motion court all determinations of witness credibility, and it is entitled to disbelieve the testimony of any witness, including the movant. *Chaney v. State*, 323 S.W.3d 836, 841 (Mo.App. E.D.2010).

## Analysis

 To prevail on a claim of ineffective assistance of counsel, the movant must prove that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances and that he was thereby prejudiced. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). When a negotiated plea of guilt is at issue, "a claim of 'ineffective assistance of counsel is immaterial except to the extent it impinges upon the voluntariness and knowledge with which the plea of guilty was made.'" *Boyd v. State*, 205 S.W.3d 334, 338 (Mo. App. S.D.2006) (quoting *Cupp v. State*, 935 S.W.2d 367, 368 (Mo.App. S.D.1996)); *see also Reynolds v. State*, 994 S.W.2d 944, 946 (Mo. banc 1999) ("The validity of a plea of guilty depends on whether it was

made voluntarily and intelligently"). The prejudice a movant must prove in order to obtain relief based on a claim that he was induced to plead guilty due to either fraud or mistake by his attorney is that "but for the conduct of his [plea counsel] about which he complains, he would not have pleaded guilty but would have insisted on going to trial." *Stuart v. State*, 263 S.W.3d 755, 757 (Mo.App. S.D.2008); *Nesbitt v. State*, 335 S.W.3d 67, 69 (Mo.App. E.D.2011); *see also Premo v. Moore*, —— U.S. ——, 131 S.Ct. 733, 743, 178 L.Ed.2d 649 (2011).

"A plea is knowing ... if the defendant is informed of the elements of the offense at or before the plea hearing and understands them." *Flint v. State*, 341 S.W.3d 688, 689 (Mo.App. S.D.2011). "A decision to plead guilty ... is voluntary if the defendant may exercise free will in making that decision—that the choice is made without physical or psychological coercion." *State v. Shafer*, 969 S.W.2d 719, 731 (Mo. banc 1998) (citing *State v. Lytle*, 715 S.W.2d 910, 915 (Mo. banc 1986)). Conversely, "[a] plea of guilty is not made voluntarily 'if the defendant is misled, or is induced to plead guilty by fraud or mistake.'" *Johnson v. State*, 318 S.W.3d 313, 317 (Mo.App. E.D.2010) (quoting *Roberts v. State*, 276 S.W.3d 833, 836 (Mo. banc 1999)).

 "A plea of guilty voluntarily made with understanding of the nature of the charge is conclusive as to guilt and waives all nonjurisdictional, procedural and constitutional infirmities, if any, in any prior stage of the proceeding." *Geren v. State*, 473 S.W.2d 704, 707 (Mo. banc 1971) (citations omitted). That waiver extends to claims of ineffective assistance of counsel. *See Berry v. State*, 214 S.W.3d 413, 415 (Mo.App. S.D.2007). The record supports the motion court's finding that Movant's guilty plea was both knowing and voluntary.

Movant assured the plea court, both orally and in writing, that he understood the amended charge, that he was guilty of that crime, and that he was pleading guilty of his own free will and not as the result of any coercion or the influence of any drugs, alcohol, or medication. The motion court was entitled to believe these assurances despite Movant's later protestations to the contrary. *Chaney*, 323 S.W.3d at 841. The motion court was also free to disbelieve Movant's bare assertion that he would have insisted on going to trial on first-degree murder if he had known that Son's statement about attempting to deceive the polygraph could have been used to impeach Son if he testified at Movant's trial.[4] As a result, whether Son *could* have been impeached *if* he had testified is irrelevant.

Movant chose to avoid a possible first-degree murder conviction and its attendant punishment of life in prison without parole by eschewing his right to trial and pleading guilty to a reduced charge based on a negotiated agreement that preserved his eligibility for parole. His decision to do so represented "a voluntary choice of alternatives available to him at the time, according to his own best interests." *Turner v. State*, 755 S.W.2d 409, 410 (Mo.App. E.D.1988).

Movant's point is denied, and the motion court's order denying post-conviction relief is affirmed.

RAHMEYER and Lynch, JJ., Concurs.

---

**4.** In support of his claim that he would have insisted on a trial, Movant makes only a bare assertion that Son's admission "would have provided [Movant with] a defense to first-degree murder[.]" Assuming, *arguendo*, that the admission would be admissible at trial, Movant offers no explanation as to how it would provide him with such a defense. Perhaps the omission is understandable as we are hard-pressed to imagine what that defense might be.