**Ricky Ray BARNES, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. SD 31921.**

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 8, 2012.

Mark A. Grothoff, Columbia, MO, for Appellant.

Todd T. Smith, Jefferson City, MO, for Respondent.

WILLIAM W. FRANCIS, JR., J.

Ricky Ray Barnes ("Barnes") appeals the motion court's denial of his Rule 24.035[1] motion for post-conviction relief after an evidentiary hearing. We affirm the judgment of the motion court.

### Factual and Procedural Background

On January 30, 2009, Barnes was charged with one count of the class A felony of assault in the first degree, a violation of section 565.050,[2] and one count of the class B felony of burglary in the first degree, a violation of section 569.160.

---

1. All rule references are to Missouri Court Rules (2011).

2. All references to statutes are to RSMo 2000, unless otherwise indicated.

On June 18, 2009, pursuant to a plea agreement, Barnes pled guilty to the aforementioned crimes.[3] At the hearing, Barnes related he discussed the "nature" of the charges against him with his plea counsel, he understood those charges, he realized he was pleading guilty pursuant to a plea agreement, he stated he "had a chance to go over [the plea agreement] and discuss it with" his plea counsel, and he and plea counsel had both signed the plea agreement.[4] The State then set out the factual basis for the plea, Barnes related the State "accurately state[d] the facts of those counts[,]" and plea counsel indicated he believed the State could make a submissible case. The plea court informed Barnes that, pursuant to the plea agreement, the State was recommending a 17–year sentence on the assault charge, a 10–year sentence on the burglary charge, and was opposing probation. Barnes stated he understood the sentencing recommendations, as well as the State's opposition to probation, and related no one else had made any promises to him in relation to his guilty plea. Barnes informed the plea court he felt plea counsel had "fully advised" him, had "told [him] what [his] legal rights are[,]" had "answered all [his] questions[,]" he was satisfied with plea counsel's services, and had no complaints or criticisms about plea counsel's performance. Barnes acknowledged he understood the rights he was giving up by pleading guilty and he was entering "free and voluntary" pleas "because [he was] in fact guilty" of the crimes charged. The plea court concluded there was a factual basis for Barnes' pleas of guilty, found Barnes understood the nature of the charges against him and the consequences of entering such guilty pleas, held the pleas were made "freely, voluntarily with an understanding of his rights[,]" and determined Barnes was guilty beyond a reasonable doubt.

A sentencing hearing was then held on June 18, 2009. Plea counsel requested a "shock incarceration program or the institutional treatment program" as part of Barnes' sentence. At that time, the State and the plea court questioned whether the violent nature of Barnes' crimes even allowed him to be eligible for alternative sentencing. After hearing from several character witnesses appearing on Barnes' behalf, the plea court sentenced Barnes— as set out in the plea agreement—to 17 years on the assault charge and 10 years on the burglary charge with the sentences to run concurrent to one another and any other sentences. Barnes then indicated to the plea court he had no problems or complaints with the performance of plea counsel.

On July 20, 2009, Barnes filed his *pro se* Rule 24.035 motion. He was thereafter appointed counsel by the motion court and his appointed counsel filed an "AMENDED MOTION UNDER RULE 24.035." Among the claims raised in this motion were allegations that Barnes' plea counsel, Reidar Hammond ("Hammond"), erroneously failed "to completely and fully explain the plea agreement to [him] and told [him] that he would receive long[-]term treatment." Barnes maintained that his reliance on the "erroneous advice" of plea

---

3. Although a written and signed plea agreement and petition for guilty plea are referenced in the transcript of this matter, copies of these documents do not appear in the legal file submitted to this Court by Barnes. It was Barnes' duty as the appellant in this matter to prepare the legal file and to provide this

Court with all of the documentation necessary to determine all issues. Rule 81.12.

4. Apparently, during the plea hearing in this matter, Barnes also pled guilty to the class D felony of resisting or interfering with an arrest.

counsel caused his guilty pleas to be involuntarily entered.

On July 28, 2011, an evidentiary hearing was held on this motion. Barnes testified that prior to his guilty plea, he "signed a piece of paper . . . an agreement. [He did not] know if it was an agreement—it was either an agreement with a fighting chance of something else; that's . . . what [he] was told[ ]" by Hammond. Barnes went on to relate Hammond told him "[t]he sentence would be opposed [by the State], like oppose probation and—something about a backup." Further, Barnes stated he asked Hammond "if [he] could get long-term treatment or probation or something[ ]" and was told Hammond "could . . . fight for probation and long-term treatment[ ]" at the sentencing hearing. Barnes then expanded this assertion by reciting that Hammond "said there's a pretty good chance that [Barnes would] probably get long-term treatment or some kind of treatment." He insisted Hammond discussed the plea agreement with him at the "last minute" prior to the plea hearing and that he informed Barnes at that time that "he could fight for . . . probation and long-term treatment, 120-day shock, some kind of treatment. [Hammond] said [Barnes] was eligible for some . . . treatments and stuff like that. [Hammond] said there's a pretty good chance of [Barnes] getting treatment[.]" Barnes stated that while Hammond "explained to [him] he could fight for probation, but the State's going to oppose[,]" Barnes "really didn't understand [the use of the word] 'oppose.'" Barnes admitted to hearing the plea court explain the plea agreement and recalled indicating he understood the terms of the agreement; however, he related Hammond "told [him] something different[.]" Although Barnes admitted on direct examination that he read the "petition to enter a plea of guilty[,]" he insisted on cross-examination that he "really didn't

read the plea agreement." Barnes admitted Hammond argued for long-term treatment at the sentencing hearing, as he had indicated he would. Further, although Barnes seemed to assert at times that he thought the 10- and 17-year sentences stated in the plea agreement represented the range of his possible punishment, the following colloquy occurred between Barnes and the State on cross-examination:

> [The State:] The judge asked you if you understood that the State was going to recommend a 17-year sentence and a 10-year sentence . . . when you pled guilty or right before you pled guilty. And do you remember telling him that you understood that that was what the State was going to ask for?
>
> [Barnes:] I thought it was going—10 and 17 years? Really that's what I thought, 10 to 17 years with oppose probation and—
>
> [The State:] Okay. Okay.
>
> [Barnes:] —whatnot.
>
> [The State:] All right. So you thought that up to 17 years basically was what you could face.
>
> [Barnes:] Yeah. That's what I thought.
>
> [The State:] And that's what you got, right?
>
> [Barnes:] Yes.
>
> [The State:] And you didn't get anymore than that?
>
> [Barnes:] No more than 17 years.

Barnes confessed he knew the maximum sentence on the burglary charge was 15 years and the maximum sentence for the assault charge was "[t]en to life or something like that." He then again admitted he understood that "[b]y the State saying [it was] not going to ask for anything more than the 17 years, that was part of the

agreement," and that was the sentence he ultimately received.

Hammond testified he specifically recalled telling Barnes he "would fight for him to have some treatment or possibly probation in his sentencing" and related that he, indeed, made those efforts on Barnes' behalf. After reviewing a copy of Barnes' plea agreement, Hammond stated that it was for "17 years on assault first, [10] years on burglary first ... with the State to oppose probation on all counts[,]" and he explained that typically when the State indicates it is going to oppose probation that means they intend to ask "for prison time." He related that in response, his position typically "in the sentencing argument would be to ask for any other disposition other than a straight Department of Corrections sentence, might be probation, might be one of the treatment options, either 120–day or long-term treatment, or 120–day shock treatment[,]" and it was his recollection that was the approach he took in Barnes' case. While unable to specifically recall going over the plea agreement with Barnes, he felt he probably spent five to ten minutes discussing it with Barnes and related he was "sure that [he] did" as it was his habit to "go over plea agreement documents and the request to plead guilty ... with every client." Hammond related he did not make any assurances to Barnes as to whether he would get probation and he stated he did not believe he had "ever advised a client that didn't have a guaranteed probation offer ... that they would receive probation[,]" such that he was "confident [he] did not make any guaranty of probation[ ]" to Barnes. He further related he was "sure" he did not advise Barnes he "was going to get any sort of institutional type treatment[,]" although based on Barnes' drug abuse history and other factors, he felt Barnes had a "better than ... average chance" of receiving some sort of treatment before the plea court at issue. At the conclusion of the hearing, the motion court took the matter under advisement.

On February 2, 2012, the motion court entered its "JUDGMENT AND FINDINGS OF FACT AND CONCLUSIONS OF LAW AS TO THE AMENDED MOTION TO VACATE, SET ASIDE, OR CORRECT THE JUDGMENT AND SENTENCE" in which it found the record from the guilty plea and sentencing hearings refuted Barnes' assertions that his counsel "was ineffective for failing to completely and fully explain the plea agreement" to him. It found that if Barnes "did not understand the range of punishment and the plea agreement, or if he felt like his attorney did not argue for long[-]term treatment, he had ample opportunity to inform the [c]ourt at the guilty plea and sentencing hearings." As such, the motion court denied Barnes' request for post-conviction relief. This appeal followed.

The issue presented for our determination is whether the motion court erred in denying Barnes' Rule 24.035 motion, which alleged he received ineffective assistance of counsel due to plea counsel's failure to properly and fully explain the terms of the plea agreement to him.

### Standard of Review

Our review of the denial of a post-conviction motion under Rule 24.035 is limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 24.035(k); *Chrisman v. State*, 288 S.W.3d 812, 820 (Mo.App. S.D.2009). " 'The motion court's findings and conclusions are clearly erroneous only if, after review of the record, the appellate court is left with the definite and firm impression a mistake has been made.' " *Conley v. State*,

301 S.W.3d 84, 87 (Mo.App. S.D.2010) (quoting *Soto v. State*, 226 S.W.3d 164, 166 (Mo. banc 2007)). The movant has the burden to show by a preponderance of the evidence that the motion court clearly erred in its ruling. *Id.*; Rule 24.035(i). Determinations concerning credibility are exclusively for the motion court and it is free to believe or disbelieve any evidence, whether contradicted or undisputed. *Mendez v. State*, 180 S.W.3d 75, 80 (Mo. App. S.D.2005). On appeal, we defer to the credibility determinations of the motion court. *Id.*

Where, as here, a defendant pleads guilty pursuant to a plea agreement, the defendant " 'waive[s] any claim that counsel was ineffective except to the extent that the conduct affected the voluntariness and knowledge with which the plea was made.' " *Welch v. State*, 326 S.W.3d 916, 918 (Mo.App. W.D.2010) (quoting *Worthington v. State*, 166 S.W.3d 566, 573 (Mo. banc 2005)). A movant "bears the burden of proving his post-conviction claims ... by a preponderance of the evidence." *Chaney v. State*, 223 S.W.3d 200, 206 (Mo. App. S.D.2007).

■■ To prevail on a claim of ineffective assistance of counsel, a movant must show counsel's representation fell below an objective standard of reasonableness and that, as a result, movant was prejudiced. *Id.* at 206; *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984). In cases where the movant has entered a guilty plea, "prejudice" requires the movant show that but for his counsel's alleged unreasonable conduct, there is a reasonable probability he would not have pled guilty and would have insisted on going to trial. *Cupp v. State*, 935 S.W.2d 367, 368 (Mo.App. S.D.1996). " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Moss v. State*, 10 S.W.3d 508,

511 (Mo. banc 2000) (quoting *Strickland*, 466 U.S. at 695, 104 S.Ct. 2052). Movant's claim of ineffective assistance of counsel must fail if either the performance or the prejudice prong cannot be met. *Patrick v. State*, 160 S.W.3d 452, 455 (Mo.App. S.D. 2005).

### Analysis

■ As found by the motion court, Barnes' assertions are clearly refuted by the record from the plea and sentencing hearings, as well as his testimony at the evidentiary hearing on his Rule 24.035 motion. At the plea hearing, Barnes insisted he understood the terms of the plea agreement, that Hammond had explained the plea agreement to him, and that he had read and signed the plea agreement. He maintained his guilty pleas were free and voluntary, as well as made with no other promises than those found in the plea agreement; he related he understood the State would be opposing probation and he assured the plea court he understood what that meant; he acknowledged he understood the rights he was giving up by pleading guilty; he agreed with the State's recitation of the facts against him and admitted he committed the crimes charged; and he informed the plea court, on more than one occasion, that he was satisfied with the services of Hammond. Thereafter, at the sentencing hearing, Barnes again heard the terms of the plea agreement recited by the plea court, he heard Hammond argue, as promised, for alternative sentencing instead of straight prison time, and he insisted he had no complaints about Hammond's performance as his counsel. Further, at the evidentiary hearing, Barnes never specifically testified Hammond "promised" or "assured" him he would receive anything other than "jail-time" although he insists in his brief and point relied on that he did. Barnes' evi-

dentiary hearing testimony was that Hammond promised to "fight" for alternative sentencing and argue to the plea court that such sentencing would be appropriate in Barnes' case. The record is clear Hammond fulfilled that pledge; however, his request was simply denied by the plea court. Additionally, at the evidentiary hearing, Barnes very clearly testified he understood he was facing up to 17 years in prison and admitted that was the sentence he ultimately received. Barnes had ample opportunity to complain about Hammond's performance and, instead of doing so, he repeatedly stated unequivocally that he was satisfied with his counsel's performance. *See May v. State,* 309 S.W.3d 303, 307 (Mo.App. E.D.2010). His assertions to the contrary, which the motion court was not required to believe in the first instance, are conclusively refuted by the record, and it is apparent Barnes voluntarily entered into a plea agreement that he had been fully appraised of, including the reality that probation or treatment was not guaranteed. The motion court did not err in finding Barnes did not receive ineffective assistance of counsel based on his assertions that plea counsel failed to properly explain the plea agreement to him. Point denied.

The order of the motion court is affirmed.

GARY W. LYNCH, P.J. and NANCY STEFFEN RAHMEYER, J., concur.